480 A.2d 242

**Nicholas MARTINO, Appellee,**

**v.**

**TRANSPORT WORKERS' UNION OF PHILADELPHIA, LOCAL 234 and Transport Workers' Union of America, AFL–CIO, Appellees,**

**and**

**Southeastern Pennsylvania Transportation Authority, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1984.

Decided June 29, 1984.

392

Marcus Manoff, Philadelphia, for appellant.

Elliot A. Strokoff, Harrisburg, for amicus curiae.

Harris T. Bock, Philadelphia, for Nicholas Martino.

Michael Brodie, Philadelphia, for Transport Workers Union of Phila.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Southeastern Pennsylvania Transportation Authority (SEPTA) appeals by allowance an order of Superior Court [1] affirming Philadelphia Court of Common Pleas' denial of SEPTA's preliminary objections challenging its jurisdiction to hear and decide the case.[2] We affirm.

1. Superior Court correctly determined that jurisdiction was properly in the Commonwealth Court. Act of July 9, 1976, P.L. 586, No. 142, § 2, 42 Pa.C.S. § 762, effective June 27, 1978, *as amended.* However, Superior Court determined that its "jurisdiction" over this appeal was perfected by appellee's failure to file preliminary objections. Act of July 9, 1976, *supra,* at § 2, 42 Pa.C.S. § 704. *See also* Pa.R.A.P. 741. Superior Court concluded that "under the circumstances of the case and in the interest of judicial economy" it would decide the case rather than transfer it to Commonwealth Court. 301 Pa. Superior Ct. 161 at 169, n. 3, 447 A.2d 292 at 296, n. 3.

2. SEPTA took this appeal pursuant to the Act of March 5, 1925, P.L. 23, § 1, 12 P.S. § 672 which provided:
 Whenever in any proceeding at law or in equity the question of jurisdiction over the defendant or of the cause of action for which suit is brought is raised in the court of first instance, it shall be preliminarily determined by the court upon the pleadings or with depositions, as the case may require; and the decision may be appealed to the Supreme Court or the Superior Court, as in cases of final judgments.

## I.

The sole question for our consideration is whether a public employee is totally precluded from obtaining any relief directly or indirectly, involving his public employer, for discharge in arguable breach of a collective bargaining agreement when the union has violated its duty of fair representation by failing in bad faith to pursue his grievance to impartial arbitration. SEPTA bases its main argument on its interpretation of *Ziccardi v. Commonwealth*, 500 Pa. 326, 456 A.2d 979 (1982), arguing that Common Pleas lacked jurisdiction over Martino's equity suit against SEPTA for wrongful discharge because Section 903 of the Public Employe Relations Act (PERA), Act of July 23, 1970, P.L. 563, No. 195, 43 P.S. § 1101.903, makes grievance arbitration the public employee's exclusive remedy against a public employer for breaches of the bargaining agreement and does not compel the signatories to the bargaining agreement to proceed to arbitration.

We held in *Ziccardi* that generally an employee cannot seek reinstatement directly from a court even though the union's failure to pursue a discharge to arbitration was in bad faith. However, where necessary to provide a meaningful remedy by arbitration, when that remedy is denied by the union's fraud or bad faith, the employer can be joined in the employee's action against the union for its bad faith breach of fiduciary duty and the chancellor may fashion an appropriate equitable remedy which would permit grievance arbitration *nunc pro tunc*.[3]

Section 672 was repealed by the Act of April 28, 1978, P.L. 202, No. 53, § 2(a)[1069], effective June 27, 1980. Under the Judicial Code and the Rules of Appellate Procedure now in effect, only orders dismissing an action for lack of subject matter jurisdiction, may be immediately appealed as of right because they are final orders. *See* 42 Pa.C.S. § 5105; Pa.R.A.P. 341. Orders sustaining personal or *in rem* jurisdiction are interlocutory appeals as of right under Pa.R.A.P. 311(b). All others orders sustaining jurisdiction, on the other hand, are interlocutory and appealable only by allowance. *See* 42 Pa.C.S. § 702(b); Pa.R.A.P. 311; 312; 1311.

3. Our decision in *Ziccardi* is not inconsistent. Therein, we held only that "an employee has no right to sue his employer in equity and

## II.

SEPTA discharged Martino on August 4, 1977 alleging that he made improper fare collections. Pursuant to a collective bargaining agreement between SEPTA and the Union, the Union processed Martino's grievance through the three permitted levels of grievance hearings. The Union represented Martino at each hearing and each hearing resulted in a decision against Martino. The Union then declined to seek impartial arbitration which is the statutorily prescribed remedy under the collective bargaining agreement for grievances unresolved by the three step internal procedure.

In his complaint, Martino sought relief against SEPTA for allegedly discharging him in violation of the collective bargaining agreement. He also sought relief against the Union for alleged breach of its duty of fair representation in, *inter alia,* failing to submit his discharge case to arbitration. He further claimed that he had exhausted the remedies available to him under the collective bargaining agreement. In Count Two, Martino claimed that his discharge was unsupported by competent or substantial evidence and that SEPTA based its decision at the grievance hearings on irrelevant and immaterial evidence. Martino did not allege that SEPTA had in any way participated in the Union's breach of its duty of fair representation. Here he seeks an order compelling the Union and SEPTA to participate in an arbitration proceeding *nunc pro tunc* and he also asserts a claim against SEPTA under 42 U.S.C. § 1983.[4]

Common Pleas overruled SEPTA's preliminary objection that Martino failed to exhaust the contractual grievance

assumpsit for breach of the collective bargaining agreement." 500 Pa. at 332, 456 A.2d at 981. In short, *Ziccardi* held only that he had no right to sue on the contract. *See infra* at 399–400.

4. Under federal law and the express terms of our decision in *Ziccardi,* Common Pleas has subject matter jurisdiction over the federal claim. However, its sufficiency is not before us on this interlocutory appeal under the now repealed statute which allowed appeals limited to the narrow jurisdictional issue.

procedure, concluding that *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) and *Falsetti v. Local Union No. 2026, UMWA,* 400 Pa. 145, 161 A.2d 882 (1960) had reached diametrically opposite conclusions and for that reason, the jurisdictional issue was not clear and free from doubt.[5] Superior Court affirmed *en banc* on reargument holding that Common Pleas had jurisdiction of the controversy because it fell within the general class of cases within Common Pleas' original jurisdiction and the contractual grievance procedure did not oust Common Pleas of jurisdiction.[6]

### III.

 It is well settled that a court of equity has jurisdiction and, in furtherance of justice, will afford relief if the statutory or legal remedy is inadequate, or if equitable relief is necessary to prevent irreparable harm. . *Shenango Valley Osteopathic Hospital v. Department of Health,* 499 Pa. 39, 451 A.2d 434 (1982); *Pennsylvania State Chamber of Commerce v. Torquato,* 386 Pa. 306, 125 A.2d 755 (1956), *cert. denied sub nom., Bowman v. Pennsylvania Chamber of Commerce,* 352 U.S. 1024, 77 S.Ct. 589, 1 L.Ed.2d 596 (1957).

Unlike the aggrieved employee in *Ziccardi,* Martino seeks arbitration of his grievance rather than a direct contract

5. SEPTA also argued, in the alternative, in the courts below that the Court of Common Pleas lacked jurisdiction of the matter because the union's breach of its duty of fair representation is an unfair labor practice under Section 1201 of PERA and is, therefore, within the exclusive jurisdiction of the Pennsylvania Labor Relations Board. Superior Court held that the union's alleged breach of its duty of fair representation is not an unfair labor practice under Section 1201 of PERA. This Court adopted that view unanimously in *Ziccardi* and SEPTA has not raised that argument in its appeal to us.

6. A panel of Superior Court originally reversed holding Common Pleas lacked jurisdiction because the complaint failed to allege that SEPTA violated specific provisions of the collective bargaining agreement. The panel construed the compaint as a common law claim of unfair or wrongful discharge not recognized in this Commonwealth, *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974), and held Common Pleas lacked jurisdiction. Superior Court thereafter granted Martino's petition for reargument.

remedy against his employer. In *Ziccardi* we did not consider nor did we preclude joining the employer where necessary to provide a just and effective remedy.[7] In cases of the type we consider here, the employer approaches the status of an indispensable party to the litigation in the sense that the dispute cannot be finally resolved with equity and good conscience without his participation. *See Shell Development Co. v. Universal Oil Co.*, 157 F.2d 421 (3d Cir.1946); Pa.R.C.P. 1032.

We therefore further define *Ziccardi* by holding that an employee may seek in equity under either our state or federal law by joining his employer where the union breaches its duty of fair representation when such joinder is necessary to afford him an adequate remedy. However, the union's misconduct should not deprive the employer of all the procedural and substantive benefits of the bargained for grievance procedure, a procedure which PERA mandates. Therefore, we also hold that the employee's relief under PERA is limited to an order from the chancellor compelling arbitration of the underlying grievance. The imposition of that limitation and its restriction to cases seeking relief under PERA requires an examination of the development of the federal law in this area and its relation to our state policies concerning public sector bargaining.

Both before and since *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), the United States Supreme Court has vacillated on whether an employee has a right to judicial relief under federal law for breach of contract against his employer when his union improperly fails or refuses to arbitrate his grievance, as well as on the nature of the relief to which he may be entitled.[8]

7. Therein we noted the case would be different in the event such an action were in trespass if the facts showed the employer actively participated in the union's bad faith or if there were a conspiracy between the employer and his union to deny the employee the job protection accorded him by the collective bargaining agreement.

8. In *Moore v. Illinois Central C.R. Co.*, 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941), the United States Supreme Court permitted an employee's suit to enforce a collective bargaining agreement against his employer despite the employee's failure to exhaust administrative

In *Falsetti v. Local Union No. 2026 United Mine Workers, supra,* a pre-*Vaca* case arising under the federal Labor remedies under Section 3 of the Railway Labor Act, 45 U.S.C. § 153. The Court held those administrative remedies were "voluntary." *See also Elgin, Joliet and Easter Railway Co. v. Burley,* 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). Four years later, in *Slocum v. Deleware, Lackawanna and Western R. Co.,* 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950), the Court reversed its ground holding that the administrative remedies for adjustment of grievances in the Railway Labor Act were exclusive and that courts are particularly ill-equipped to assume the role of umpire in industrial disputes.

The Court has also considered employee and union suits under Section 301(a) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), which permits "suits for violation of contracts between an employer and a labor organization representing employees...in any district court of the United States having jurisdiction of the parties...." Unlike the Railway Labor Act, the LMRA does not provide a dispute resolution mechanism. In *Textile Workers v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), the Court determined that the language of Section 301 has a substantive content and authorizes the Court to devise federal common law to govern collective bargaining agreements. Therefore, it permitted a Section 301 action by a union to compel arbitration pursuant to the collective bargaining agreement despite a contrary rule under state law prohibiting specific performance of arbitration agreements. *See also General Electric Co. v. United Electrical Radio & Machine Workers,* 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed. 2d 1028 (1957). The Court permitted Section 301 suits brought by a union to obtain specific enforcement of an arbitrator's award for reinstatement and backpay. *United Steel Workers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 358, 4 L.Ed.2d 1424 (1960).

The Court also determined that damage to the arbitration process would be minimized if in Section 301 suits brought by unions, the courts would, wherever possible, compel the parties to utilize the dispute resolution mechanisms of the colective bargaining agreement. *United States Steel Workers v. American Manufacturing Co.,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Neither *Slocum* nor *Lincoln Mills,* however, involved individual employees' efforts to arbitrate a grievance the union refused to pursue. Both cases involved suits by the union to compel the employer to arbitrate pursuant to the collective bargaining agreement. In *Humphrey v. Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), the Court permitted employees to sue to enforce seniority rights under the collective bargaining agreement despite a contrary decision by a joint management and union committee. *See also Smith v. Evening News Assoc.,* 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *Warrior & Gulf,* 363 U.S. at 581, 80 S.Ct. at 1352. Finally, in *Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), the Court held an employee must at least attempt to use the procedure established by the agreement before bringing suit. It reserved for another day the question of the redress available if the union "refused to" or "perfunctorily" pressed the employee's claim.

Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, this Court considered the question of the employee's right to sue his employer in equity for wrongful discharge where the union has breached its duty of fair representation.[9] In *Falsetti*, the employee filed a complaint in equity against his former employer and named officials of his union for an alleged wrongful discharge from his employment. The employee sought reinstatement, restoration of his seniority rights and damages. Thereafter the union expelled him from membership. The employee then amended his complaint to also allege wrongful expulsion from union membership. Initially, we determined that the employee misjoined the causes of action. We then held that the trial court lacked jurisdiction of either claim.

In addition, we held that the employee could not maintain a cause of action against his union officials for breach of their duty of fair reprsentation. Instead, we said such a claim was limited to an action agianst the union itself for breach of its "fiduciary obligation." In holding that Common Pleas lacked jurisdiction of the employee's claim against his employer, we determined that the enforcement of third-party rights under the collective bargaining agreement between the International Union and the Company must be derived solely from the agreement itself. We stated:

> We have carefully read the entire Agreement and can find *no* provision which authorizes appellant to enforce it. Although the seniority provisions relied upon inure directly for the benefit of the appellant-employee and do not exist simply to protect the interests of the Union, appel-

**9.** The United States Supreme Court first recognized individual employees' rights to equitable relief against their union where it breaches its duty of fair represenattion in *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). *See Wallace Corp. v. N.L.R.B.*, 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216 (1944) (unions governed by LMRA are charged with duty to represent all employees fairly and impartially). *See also Humphrey v. Moore, supra; Ford Motor Company v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).

lant's cause of action is precluded by a contractual grievance and arbitration procedure which, by its very terms, limits access thereto to the Union. The parties in drafting this Agreement provided for a simple expeditious and inexpensive grievance procedure to be administered by persons intimately familiar therewith. The procedure outlined was designed not only to promote settlement, but also to foster more harmonious employer-employee and employer-union relations. The parties expressly sought to avoid litigation, recognizing that the courts are particularly ill-equipped to assume the role of umpire in industrial disputes.

*Id.*, 400 Pa. at 168–69, 161 A.2d at 893–894 (footnotes omitted) (emphasis in original).

Prior to *Vaca*, with the law developing as outlined, *see supra* n. 8, at 397–399, some courts barred employee equity actions against the employer in order to effectuate a broad public policy that the union had exclusive control over the enforecement of the employer's contract obligations in a collective bargaining agreement. These courts, seeing only the polar alternatives of a full remedy or none at all, reasoned "[t]o allow each individual employee to overrule and supersede the governing body of a union would create a condition of disorder and instability which would be disastrous to labor as well as industry." *Biancullo v. Brooklyn v. Union Gas Co.*, 19 Lab.Arb. 83, 85 (N.Y.Sup.Ct.1952), *quoted in* A. Cox *Rights Under a Labor Agreement*, 69 Harv.L.Rev. 601, 651 (1956). *See also United States v. Voges*, 124 F.Supp. 543 (E.D.N.Y.1954).

However, some commentators felt the competing policy of preventing injustice to the individual employee whose interest, including his interest in retaining his job, is flouted by the union sometimes justifies an exception:

While the rule which bars an individual employee from bringing an action on the contract when the union is unwilling to take the case to arbitration is sound if the union has made an adjustment or is satisfied that the grievance lacks merit, nevertheless it would work injus-

tice in situations where the union is unwilling to press the claim because of indifference or reluctance to suffer the expense. . . . One solution would be to open arbitration proceedings to individual grievants. Another alternative is to allow the employee to bring suit against the employer and union as codefendants upon analogy to the bill in equity which the beneficiary of a trust may maintain against the trustee who fails to press a claim against a third person. The suit would fail on the merits if it appeared that the collective bargaining representative had dropped the grievance for lack of merit or had negotiated a reasonable adjustment. Perhaps the wisest solution is to give the union a choice between (a) preserving the single uniform method of administering the contract by permitting the employee to use its name at his own expense in carrying the case to the higher steps of the grievance procedure and ultimately to arbitration and (b) suffering an independent suit against it and the employer.

Cox, *supra*, at 652 (footnote omitted).

Then in 1967, in *Vaca v. Sipes*, the United States Supreme Court held that a state court had jurisdiction of an individual union member's action against officers and representatives of his employment in violation of the collective bargaining agreement and that the union had arbitrarily and without cause refused to take the grievance to arbitration. 386 U.S. at 186. The *Vaca* Court also stated that a wrongfully discharged employee may bring an action against his employer under Section 301 of the LMRA in the face of a defense based upon failure to exhaust contractual remedies. *See also Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The *Vaca* Court did, however, require the employee to first prove that his union breached its duty of fair representation in handling the employee's grievance. It reasoned:

[a]nother situation when the employee may seek judicial enforcement of this contractual rights arises if, as is true here, the union has sole power under the contract to

invoke the higher stages of the grievance procedure, *and* if, as is alleged here, the employee-plaintiff has been prevented from exhausting his contractual remedies by the union's *wrongful* refusal to process the grievance. ...[T]he employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies.... But the employer has committed a...breach of that agreement...which could be remedied through the grievance process...were it not for the union's breach of its statutory duty of fair representation.... To leave the employee remediless in such circumstances would, in our opinion, be a great injustice.

386 U.S. at 185–86, 87 S.Ct. at 914–15 (emphasis in original).

The Court then considered the employee's appropriate remedy in such actions. It first determined that an order compelling arbitration is an available remedy because the employee's action is based on the employer's wrongful breach of the collective bargaining agreement coupled with the union's alleged wrongful failure to afford him his contractual remedy. The Supreme Court declined, however, to require arbitration in all cases. It stated that:

[T]he employee's action is based on the employer's alleged breach of contract plus the union's alleged wrongful failure to afford him his contractual remedy of arbitration. For this reason, an order compelling arbitration should be viewed as one of the available remedies.... But we see no reason inflexibly to require arbitration in all cases. In some cases, for example, at least part of the employee's damages may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union. In other cases, the arbitrable issues may be substantially resolved in the course of trying the fair representation controversy. In such situations, the court should be free to decide the contractual claim and to award the employee appropriate damages or equitable relief.

*Id.* at 196, 87 S.Ct. at 920. As set forth in Part IV of this opinion, we do not find that reasoning, which would entrust resolution of the merits of the underlying grievance to the court rather than the arbitrator, persuasive. We will not, therefore, apply it in a case arising under PERA.[10]

The *Vaca* court also determined that the damages must be apportioned between the employer and the union according to the damages caused by the fault of each. Thus, the "damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." 386 U.S. at 197–98, 87 S.Ct.at 920–21.

Despite the clear language in *Vaca* requiring apportionment of damages between the employee and the union according to the fault of each, the *Vaca* Court declined to hold the union responsible to backpay accrued because of its failure to pursue arbitration. *See Bowen v. U.S. Postal Services,* 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983). In *Vaca* the employer discharged the employee on January 8, 1960. In early February, 1961, the union refused to take the grievance to arbitration. The employee's suit was not tried until June, 1964. A factfinder could reasonably have found that an arbitrator, had he heard the case, would have probably issued an award sometime in 1961. The *Vaca* Court, however, determined the union's share of damages was *de minimis. See also Czosek v. O'Mara,* 397 U.S. 25, 90 S.Ct. 770, 25 L.Ed.2d 21 (1970); *Milstead v. Internation-*

10. Of course, we recognize that the Supremacy Clause requires our state courts to consider the propriety of other allowable federal remedies when an action is brought under Section 301 of the LMRA. Thus, while *Falsetti, supra,* is no longer good law in cases arising under the LMRA, we are free to apply its principles in cases arising under PERA. The policy favoring arbitration of labor disputes is embodied both in LMRA and PERA. However, our legislature, recognizing the distinction we have noted in our cases between public and private sector labor relations, has reuqired arbitration of all disputes arising under public sector collective bargaining agreements. The LMRA merely permits it and federal case law encourages it. *Board of Education v. Philadelphia Federation of Teachers,* 464 Pa. 92, 99, 346 A.2d 35, 39 (1975).

*al Brotherhood of Teamster*, 649 F.2d 395 (6th Cir.), *cert. denied*, 454 U.S. 896, 102 S.Ct. 394, 70 L.Ed.2d 211.

In an effort to dispel the confusion on the damage question *Vaca* created, the *Bowen* Court elaborated on the apportionment of damages issue to fairly allocate responsibility to each party for its own wrongful act. *Bowen* held that an employer who wrongfully discharges an employee protected by a collective bargaining agreement containing an arbitration clause, is only responsible for backpay that accrues prior to the hypothetical date upon which an arbitrator would have issued an award had the employee's union taken the matter to arbitration. *Bowen* further held that the union is responsible for backpay subsequent to the hypothetical arbitration date. The Court justified this additional burden on the union as follows:

> The employer...must rely on the union's decision not to pursue an employee's grievance.... Just as a nonorganized employer may accept an employee's waiver of any challenge to his discharge as a final resolution of the matter, so should an organized employer be able to rely on a comparable waiver by the employee's exclusive representative.
>
> ...By seeking and acquiring the exclusive right and power to speak for a group of employees, the union assumes a corresponding duty to discharge that responsibility faithfully—a duty which it owes to the employees whom it represents and on which the employer with whom it bargains may rely. When the union, as the exclusive agent of the employee, waives arbitration or fails to seek review of an adverse decision, the employer should be in substantially the same position as if the employee had had the right to act on his own behalf and had done so.

*Id.* 459 at 225–26, 103 S.Ct. at 596–97.

## IV.

With this history of employee suits under federal labor law in mind, we turn to PERA, the state labor statute in

question here. PERA applies only to public employers and certain public employees.[11] Specifically, PERA defines a public employer as one not subject to either the Pennsylvania Labor Relations Act, 43 P.S. § 211.1 et seq., or the LMRA. While the federal cases discussed in Part III of this opinion interpreting the rights of employees to sue their unions and employers under the LMRA are instructive, they are not authoritative on cases arising under PERA. *Pennsylvania Labor Relations Board v. State College Area School District*, 461 Pa. 494, 337 A.2d 262 (1975). In *State College* we stated:

> The distinction between the public and private sector cannot be minimized. Employers in the private sector are motivated by the profit to be returned from the enterprise whereas public employers are custodians of public funds and mandated to perform governmental functions as economically and effectively as possible. The employer in the private sector is constrained only by investors who are most concerned with the return for their investment whereas the public employer must adhere to the statutory enactments which control the operation of the enterprise.

*Id.*, 461 Pa. at 499–500, 337 A.2d at 264.

With the distinction between public and private sector employer-employee relations in mind we turn finally to Section 903 of PERA. It provides:

> Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree.

43 P.S. § 1101.903.

The policy favoring arbitration of labor disputes is embodied in both PERA and the LMRA. However, PERA makes arbitration of all disputes arising under public sector collec-

---

11. Police officers and firemen come under the Act of June 24, 1968, P.L. 237 (Act 111), 43 P.S. § 217.1 *et seq.*

tive bargaining agreements the exclusive remedy for unresolved grievances not involving police officers or firemen. As we observed in note 10, *supra,* at 248, the LMRA merely permits arbitration although federal case law generally encourages it. *See* 29 U.S.C. § 203(d); *United States Steel Workers v. American Manufacturing, supra. See also Board of Education v. Philadelphia Federation of Teachers,* 464 Pa. at 99, 346 A.2d at 39.

The coupling of collective bargaining with grievance arbitration is the genius of American labor law. It is the grievance procedure, capped by the possibility of arbitration in a limited number of cases, which insures peace in the workplace during a contract's term. It does so by providing an efficient mechanism for dispute resolution by persons knowledgeable in labor-management problems. Arbitrators under collective bargaining agreements are indispensible to a workable collective bargaining process. Since freedom from strife is especially important in the public sector our legislature made arbitration a cornerstone of its policy in that sector by elevating it from a favored to an exclusive remedy. *See Board of Education v. Philadelphia Federation of Teachers, supra. See also* Edwards, *The Developing Labor Relations Law in the Public Sector,* 10 Duquesne Law Review 357 (1972).

In *Ziccardi* we balanced the respective interests and roles of the public employer, its employees and the employees' collective bargaining agent with PERA's arbitration mandate and simply enforced the provision of the collective bargaining agreement concerning grievance arbitration, which gave the union exclusive power to bring employee grievances to arbitration. We therefore held a public employee has no right to sue his employer for wrongful discharge when the union has refused to proceed to arbitration unless the employer participated in the union's breach of its duty of fair representation. We stated:

By giving the employee an unfettered right to sue the employer for the union's bad faith, we would relieve the wrongdoer of any effective sanction, make the plaintiff

whole at the expense of an innocent party and bind that innocent party by the action of the plaintiff's agent, over whom it has no control. This would be in total violation of the principles of the law of agency. Furthermore, any attempt by the employer to exercise control over the union in such matters violates fundamental principles of labor law concerning the right of the bargaining agent and its members to be free of employer coercion.

500 Pa. at 332, 456 A.2d at 982.[12] *See also McCluskey v. PennDOT,* 37 Pa. Commonwealth Ct. 598, 391 A.2d 45 (1978).

*Ziccardi* does preclude an employee from directly seeking reinstatement in a court action for wrongful discharge;[13] it does not prevent an equity court from fashioning a remedy which will effectutate the parties' collective bargaining agreement so long as its decree insures compliance with

**12.** Appellee Transportation Workers' Union argues that the *Ziccardi* rule would encourage unions to take all grievances, including frivolous ones, to arbitration. That argument is, in turn, frivolous. It ignores the fact that under *Ziccardi* the union is not responsible for negligence in processing a grievance. Instead, the union is only responsible to its members for acts of bad faith with respects to a grievance. That high standard insulates the union from exposure where, after a proper exercise of discretion, it declines to process a frivolous and meritless grievance. Moreover, we noted the possibly subliminal concern of both employer and union, expressed in argument, that opening the courts to any action by disgruntled employees will force unions to take all grievances to arbitration in order to avoid expensive lawsuits. We cannot believe that experienced, responsible unions will be: so deficient in judgment that they cannot recognize frivolous cases; so ineffective that they cannot demonstrate to aggrieved members of the unit why there is little chance of success at arbitration; or so lacking in courage that they will not make the hard choices required of all fiduciaries when the separate interests of their beneficiaries conflict among themselves, as in seniority disputes, or with the interest of the whole, as in dealing with a dangerously incompetent, violent or clearly dishonest worker. Whether this union's judgment in making that hard choice was so woeful as to constitute bad faith will be the threshold question before Common Pleas here.

**13.** In a dissenting opinion, Mr. Justice Larsen, joined by Chief Justice O'Brien and Mr. Justice, later Chief Justice, Roberts, would have permitted a wrongfully discharged employee to directly sue his employer for breach of contract and to recover reinstatement and damages for such breach.

PERA's requirement of mandatory grievance arbitration. In requiring mandatory arbitration of public employees' grievances, the legislature certainly did not intend to shield the employer from the natural consequences of its breach of the collective bargaining agreement, nor did the legislature intend to deprive employees of the right, under proper circumstances, to seek equitable relief compelling pursuit of the statutorily prescribed grievance arbitration procedures under a collective bargaining agreement precluding the employee from seeking his statutory remedy. Thus, the Chancellor may, under proper circumstances, order the union and employer to arbitrate the aggrieved employee's grievance; and, where the arbitrator deems it appropriate, he may order reinstatement.

Our legislature mandates that:

> In all cases where a remedy is provided or a duty is enjoined or anything is directed to be done by any statute, the directions of the statute shall be strictly pursued, and no penalty shall be inflicted, or anything done agreeably to the common law, in such cases, further than shall be necessary for carrying such statute into effect.

1 Pa.C.S. § 1504. Our holding that the chancellor lacks authority to resolve the underlying grievance is consistent with that statutory provision and the strong policy favoring arbitration of public sector grievances embodied in Section 903 of PERA. Moreover, our holding that the chancellor may, if the employee establishes the union's breach of its duty of fair representation, order arbitration of the underlying grievance *nunc pro tunc* provides the employee with a complete and adequate legal remedy.[14] See D. Feller, *A General Theory of the Collective Bargaining Agreement,* 61 Cal.L.Rev. 663, 813 (1976).[15]

**14.** Unlike *Ziccardi,* Martino's complaint against the union and SEPTA seeks an order directing the union to undertake its duty to represent him and to initiate arbitration proceedings *nunc pro tunc.*

**15.** The court in *Vaca* assigned two reasons for the proposition that the court could reach the underlying grievance in actions based on the union's breach of its duty of fair representation. First, the Court stated that "[i]n some cases at least part of the employee's damages

We are also persuaded by *Bowen* that such relief must limit the employer's liability for backpay to the period from the date of wrongful discharge to the date when arbitration would normally have commenced. In the absence of an apportionment providing meaningful sanctions against the union, incentives to comply with the grievance procedure would be diminished. *See Bowen, supra*[16] *See also Ziccardi,* 500 Pa. at 332, 456 A.2d at 982.

In conclusion, we hold today that before a court in equity may entertain a complaint seeking to order arbitration, the complainant must prove that the union acted in bad faith towards its member. Once it has been determined that the union breached its duty of fair representation, the

may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union." 386 U.S. at 196, 87 S.Ct. at 920. However, "it is perfectly possible, and indeed desirable, to couple an order directing the union to process the grievance with an order imposing liability on the union for any additional damages suffered by the employee if it should be found in arbitration that the grievance was justified, without jumping to the conclusion that, in order to do so, the court must itself decide the merits of the grievance." Feller, *supra,* 61 Cal.L.Rev. at 814. The *Vaca* court's second reason for not limiting the remedy to an order to process the grievance was that "the arbitrable issues may be substantially resolved in the course of trying the fair representation controversy...." 386 U.S. at 196, 87 S.Ct. at 920. It does not follow, however, that the court should proceed to decide the merits.

> [T]here are differences in the quality of judgment and the standards to be applied in arbitration as compared with the judicial forum...and considerable differences...in the remedies available....

Feller, *supra,* at 815.

**16.** As previously stated SEPTA discharged Martino on August 4, 1977. If a union which breaches its duty of fair representation is not responsible for backpay from the hypothetical arbitration date to ultimate resolution of the underlying grievance, SEPTA would be responsible for at least seven years of backpay. The dissenters in *Bowen* note that most of the cases of this nature have taken the better part of a decade to resolve. Of course, where it appears to the chancellor that the employer actively participated with the union in its bad faith deprivation of the employee's right to protection under the collective bargaining agreement, the court can direct different appropriate apportionment to the backpay liability. *See Ziccardi, supra.*

Court of Common Pleas sitting in equity many order the completion of the arbitration procedure and, in cases governed by state labor law its power is limited to that remedy. The only matter before the arbitrator would be to determine whether or not the complainant was wrongfully discharged and to apportion damages for backpay in a manner consistent with this opinion, if the arbitrator concludes backpay is warranted. Under this procedure, a wrongfully discharged employee receives precisely the treatment all the employees in the unit are entitled to under the collective bargaining agreement.

Based on the foregoing, the order of the Superior Court is affirmed and the record is remanded to Common Pleas for further proceedings consistent with this opinion.

LARSEN, J., files a Concurring Opinion.

NIX, C.J., did not participate in the consideration or decision of this case.

LARSEN, Justice, concurring.

I agree with the majority in affirming the order of the Superior Court. I disagree, however, with the notion that where an employee establishes that a union has breached its duty of fair representation, a court is limited to ordering arbitration of the underlying grievance *nunc pro tunc,* and such an order provides the employee with a complete and adequate legal remedy. This limitation on a court's powers is not required and could serve to prevent a grieved employee from obtaining appropriate relief in all cases.

In *Vaca v. Sipes,* 386 U.S. 171, 176, 87 S.Ct. 903, 920, 17 L.Ed.2d 842 (1967), the United States Supreme Court considered the advisability of so limiting a court's powers:

It is true that the employee's action is based on the employer's alleged breach of contract plus the union's alleged wrongful failure to afford him his contractual remedy or arbitration. For this reason, an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved.

But we see no reason inflexibly to require arbitration in all cases. In some cases, for example, at least part of the employee's damages may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union. In other cases, the arbitrable issues may be substantially resolved in the course of trying the fair representation controversy. In such situations, the court should be free to decide the contractual claim and to award the employee appropriate damages or equitable relief.

Although the majority does not find the *Vaca* court's reasoning persuasive, I do.

"Of paramount importance is the right of the employee, who has been injured by both the employer's and the union's breach, to be made whole."

*Bowen v. United States Postal Service*, 459 U.S. 212, 103 S.Ct. 588, 74 L.Ed.2d 402 (1983).

The majority points out that a policy favoring arbitration is etched in the provisions of the Public Employe Relations Act (PERA), 1970, July 23, P.L. 563, No. 195, Art. I § 101, et seq., 43 P.S. § 1101.101 et seq. The Act requires arbitration of all disputes involving interpretation of a collective bargaining agreement. Section 903 of PERA, in pertinent part provides:

"Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-partite board of arbitrators as the parties may agree."

Act. 1970, July 23. P.L. 563, NO. 195 Art. IX, § 903, 43 P.S. 1101.903. The instant case involves more than a dispute arising out of the interpretation of a collective bargaining agreement. The appellee complains that he was deprived of the very procedural rights provided by section 903. The wrongful denial of that *final step*—arbitration—is what

gave rise to the lawsuit. In the typical case (as is the case here) the employee is fired from his employment. He alleges that his discharge is unlawful in that it violates a collective bargaining agreement. He seeks redress through the grievance procedure established by the bargaining agreement—a procedure controlled by the union and his employer. The union wrongfully fails to proceed to the final step of arbitration on behalf of the grieved employee. As a consequence, the injured employee is prevented from pursuing the contract remedy. This part of his claim does not involve interpretation of the provisions of the bargaining agreement. Rather, it involves the employee's claim that the union has in bad faith, breached its duty of fair representation.[1]

> "It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which [the employer] agreed in the collective bargaining agreement. But the employer has committed [an alleged] wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process to the [employee's] benefit were it not for the union's breach of its [duty to represent the employee fairly in the grievance process]."

*Ziccardi v. Commonwealth,* 500 Pa. 326, 335, 456 A.2d 979, 983 (1982) (Dissenting Opinion, Larsen, J.) citing *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

In *Teamsters Local Union No. 77 v. Pennsylvania Turnpike Commission,* 17 Pa. Cmwlth. 238, 331 A.2d 588 (1975), the court, citing *United Steelworkers of America v. Enterprise Wheel and Car Co.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960) defined the role of an arbitrator:

> "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He

---

1. An employee-member of a bargaining unit has the right to maintain an action against his union for breach of its duty of fair representation. *Ziccardi v. Commonwealth,* 500 Pa. 326, 456 A.2d 979 (1982).

may of course look for guidance from many sources, *yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement."*

This standard, often referred to as the "essence test," means that an arbitration award is proper only if it is derived from the bargaining agreement. *See: Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977). An arbitrator is bound to fashion a remedy which is based upon the terms of the bargaining contract. In cases where there is no agreement-based authority for the relief sought by a grieved employee, an order directing arbitration *nunc pro tunc* is unsatisfactory. In such cases the courts must have the power to fashion an appropriate remedy so that the injured employee may be made whole.

I would hold that where an employee is wrongfully discharged and seeks a remedy through the established grievance procedure, but is prevented from doing so by the union's breach of its duty of fair representation in processing the grievance, that employee may maintain an action against the employer for any appropriate legal and equitable relief justified under the circumstances.

Applying the foregoing, I concur in the result reached by the majority.