IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quentin Salem,                             :
                                           :
                          Petitioner       :
                                           :
              v.                           : No. 478 M.D. 2017
                                           : Submitted: February 7, 2020
American Federation of State,              :
County, and Municipal Employees            :
Council 90 (AFSCME 90)                     :
Pennsylvania Higher Education              :
Assistance Association (PHEAA),            :
                                           :
                          Respondents      :


OPINION NOT REPORTED

MEMORANDUM OPINION
PER CURIAM                                          FILED: March 25, 2021


Before this Court is the American Federation of State, County, and Municipal Employees Council 90's (Union) Application for Summary Relief (Application) filed pursuant to Rule 1532(b) of the Pennsylvania Rules of Appellate Procedure[1] to dismiss with prejudice Quentin Salem's (Petitioner) First Amended Complaint (Amended Complaint). For the reasons that follow, we grant the Application and dismiss the Amended Complaint with prejudice.


**I. Background**

Petitioner, who is proceeding *pro se*, initiated this action by filing a Complaint in equity against the Union, which he amended to join his employer,

---

[1] Rule 1532(b) provides: "Summary relief. At any time after the filing of a petition for review in an appellate or original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa. R.A.P. 1532(b).

Pennsylvania Higher Education Assistance Association (PHEAA).[2] In the Amended Complaint, Petitioner claimed that the Union breached its duty of fair representation owed to him. First Amended Complaint at 2. In support, Petitioner pled the following facts.

Petitioner was a clerical wage employee at PHEAA from August 2014 until his termination from employment on July 2, 2015. Petitioner was an agency fee-paying employee but not a Union member and was covered under the PHEAA Clerical Wage Addendum (Addendum), which is an addendum to a collective bargaining agreement (CBA) between the Union and PHEAA. The Union represents PHEAA's clerical wage employees in employment disputes. First Amended Complaint at 1-2.

Petitioner further alleged that, in early July 2015, shortly after his termination from employment, he presented two grievances to the Union. The grievances pertained to the possible unlawful promotions of his coworkers and discipline imposed against him. The Union did not file any grievances on his behalf until October 7, 2015. In April 2016, the Union presented Petitioner's grievances to PHEAA in a third-step grievance meeting. After this meeting, the Union did not communicate with Petitioner until June 2016. On June 10, 2016, a Union

---

[2] The Complaint was originally filed in the Court of Common Pleas of Dauphin County, but was transferred to this Court's original jurisdiction following the joinder of PHEAA. *See* Section 761(a)(1) of the Judicial Code, 42 Pa. C.S. §761(a)(1) (Commonwealth Court shall have original jurisdiction of all civil actions or proceedings against the Commonwealth government.)*; Martino v. Transport Workers' Union of Philadelphia, Local 234*, 480 A.2d 242, 249 (Pa. 1984) (where a public employee has been discharged in arguable breach of collective bargaining agreement and a union has violated its duty of fair representation by failing in bad faith to pursue agreements to impartial arbitration, the public employer approaches the status of an indispensable party to the litigation in the sense that the dispute cannot be finally resolved with equity and good conscience without its participation); *General State Authority v. Pacific Indemnity Co.*, 354 A.2d 56, 58 (Pa. Cmwlth. 1976) (PHEAA is an agency of the Commonwealth for purposes of our original jurisdiction.).

representative advised Petitioner that it concurred with PHEAA's position and was dropping the case. First Amended Complaint at 1-2.

Petitioner claimed that the Union had a duty to fairly represent him in the grievances but breached this duty based on the foregoing conduct. Petitioner further claimed that the Union's material breaches have had severe implications on his ability to defend the rights guaranteed to him through the collective bargaining process. Petitioner asked this Court to order the Union to process his grievances in accordance with its duties and to order the reimbursement of any costs and fees the Court deems just and proper. First Amended Complaint at 2.

The Union filed an answer admitting in part and denying in part Petitioner's material allegations. Thereafter, the parties engaged in discovery, which included Petitioner's written discovery requests to the Union and the Union's deposition of Petitioner.

During discovery, Petitioner filed a motion seeking summary relief against the Union, along with a statement of undisputed material facts, a memorandum of law, and supplemental brief in reply. Therein, Petitioner asserted that the Union breached its duty by not timely filing his grievances and summarily determining his grievances lacked merit before conducting an investigation. The Union responded by filing its own statement of undisputed material facts and a brief in opposition to the motion, but it did not file a cross-motion for summary relief.

Upon review of the parties' filings, this Court discerned that the following facts were not in dispute. *See Salem v. American Federation of State, County, and Municipal Employees Council 90* (Pa. Cmwlth., No. 478 M.D. 2017, filed October 31, 2018) (*Salem I*) (per curiam). In August 2014, PHEAA hired Petitioner as a credit report processing clerk. His position was in a bargaining unit

represented by the Union and his employment was governed in part by the Addendum. At the time of his discharge from PHEAA on July 2, 2015, Petitioner was a probationary employee because he had worked for PHEAA for fewer than 18 months. *Salem I*, slip op. at 4.

PHEAA issued Petitioner a final written warning on March 9, 2015, for violating PHEAA's Acceptable Use Policy based on excessive Internet usage. Multiple meetings were held between Petitioner and PHEAA about the discipline, but Petitioner did not request Union representation during those meetings. Petitioner testified that he waited to contact anyone at the Union about the final written warning until sometime in April (after he was denied a promotion), May, June or July 2015. The deadline to file a grievance is 15 working days, making March 30, 2015, the deadline to file a grievance to the March 9, 2015 discipline. *Salem I*, slip op. at 4.

On July 2, 2015, PHEAA discharged Petitioner for violating PHEAA's Acceptable Use Policy based on inappropriate Internet usage. Petitioner contacted the Union in July 2015. Petitioner spoke with the Union's Local 1224 President, Susie Sprenkle (Sprenkle). Petitioner testified he did not contact Sprenkle again until September 2015. *Salem I*, slip op. at 4.

In October 2015, Petitioner contacted and met with then-Union District Council 90 Director, Mary Schwanger (Schwanger). Schwanger filed two grievances on his behalf – one that Petitioner drafted regarding his final warning and subsequent discharge and another that Schwanger helped him draft regarding the promotion issue. *Salem I*, slip op. at 5.

Union Staff Representative Nichelle Chivis (Chivis) was assigned to handle Petitioner's grievances. In November 2015, Chivis contacted Petitioner to inform him that PHEAA had denied the grievances on the basis they were untimely

4

and lacked merit. Chivis further informed Petitioner that the Union was moving the grievances forward to the third step of the grievance procedure. A third-step grievance meeting was scheduled for April 2016. *Salem I*, slip op. at 5.

Chivis met with Petitioner in April 2016 in anticipation of the third-step grievance meeting and shared with him what she intended to present. Petitioner did not offer any input or express objections to what Chivis prepared. Chivis presented the grievances at the April 2016 meeting. At the same meeting, PHEAA presented evidence that Petitioner had been using the Internet at work to search for weapons. Petitioner was not satisfied with how the meeting went. In June 2016, Chivis informed Petitioner that the Union was not pursuing his grievances. *Salem I*, slip op. at 5.

Upon review, this Court determined that the undisputed facts did not show that the Union's conduct was arbitrary, discriminatory or in bad faith. Thus, by memorandum opinion dated October 31, 2018, we denied Petitioner's motion upon concluding that he was not entitled to summary relief as a matter of law. *Salem I*, slip op. at 13. However, because the Union had not filed a cross-motion for summary relief at that point, we could not grant summary relief in its favor. *Id.*, slip op. at 13 n.6. Thereafter, the parties engaged in additional discovery, which this Court concluded by order dated April 29, 2019.[3]

---

[3] By that point, the Union had responded to 13 requests for production of documents, 9 requests for admissions and 310 requests for interrogatories. The Union provided Petitioner with at least 200 pages of documents. The Court permitted Petitioner to serve the Union with a revised "Discovery Request 5," consisting of no more than 25 interrogatories, including subparts, within 30 days. The Court ordered that upon service of the revised Discovery Request 5 and the responses thereto, no further discovery shall take place absent good cause shown. Thereafter, the Court denied Petitioner's subsequent discovery motions.

## II. Application for Summary Relief

On December 26, 2019, the Union filed the current Application now before us for disposition. The Union contends that it did not breach its duty of fair representation to Petitioner and is entitled to summary relief based on the undisputed facts. Despite extensive discovery, Petitioner has adduced no evidence that the Union's handling of his grievances was arbitrary, discriminatory or in bad faith. In support, the Union filed a brief to which it attached exhibits, including: Petitioner's May 10, 2018 Deposition; PHEAA's final warning memo for excessive internet usage; PHEAA's July 2, 2015 Termination Letter; Petitioner's Grievance Forms dated October 7 and 9, 2015; Addendum; CBA extracts; the Union's responses to discovery requests; and various correspondence.

Petitioner filed an answer in opposition asserting that certain statements of fact, represented by the Union as "undisputed," remain in dispute. First, Petitioner disputes the Union's assertions that the deadline to file a grievance under the CBA is limited to 15 working days because the CBA also includes a reasonable diligence clause. Second, Petitioner disagrees that his refusal to give names precluded the Union from investigating the promotions by other means. Third, according to Petitioner, Chivis did not inform him that the Union was moving the grievances to the third step of the grievance process. *But see Salem I*, slip op. at 5; Union's Brief in Support of its Application for Summary Relief, Exhibit A, Quentin Salem's Deposition, 5/10/18, Notes of Testimony (N.T.) at 146-47. Fourth, Petitioner refutes the Union's statement that he did not offer any input or express any objection to what Chivis prepared for the April 2016 meeting. *But see Salem I*, slip op. at 5; N.T. at 147, 150. Fifth, Petitioner does not agree that the practice between the Union and PHEAA is to exchange all grievance information at the third step of the grievance

6

hearing.  Sixth and finally, Petitioner maintains there is a conflict in the record as to whether Chivis asked Petitioner if any discrimination occurred.  *See* Petitioner's Answer in Opposition to Summary Relief Motion at 1-5.  Petitioner maintains that the existence of these disputed material facts precludes summary relief as a matter of law.

### III. DISCUSSION
### A. Summary Relief Standard

An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.  Pa. R.A.P. 1532(b); *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008); *Eleven Eleven Pennsylvania, LLC v. State Board of Cosmetology*, 169 A.3d 141, 145 (Pa. Cmwlth. 2017).  When ruling on an application for summary relief, "we must view the evidence of record in the light most favorable to the non-moving party and enter judgment only if there is no genuine issue as to any material facts and the right to judgment is clear as a matter of law."  *Eleven Eleven*, 169 A.3d at 145 (quoting *Markham v. Wolf*, 147 A.3d 1259, 1270 (Pa. Cmwlth. 2016) (citation omitted)).  The moving party bears the burden of proving the absence of any genuine issue of material fact.  *Stuski v. Philadelphia Authority for Industrial Development*, 162 A.3d 1196, 1199 (Pa. Cmwlth. 2017).

"The record, for purposes of the motion for summary relief, is the same as a record for purposes of a motion for summary judgment."  *Borough of Bedford v. Department of Environmental Protection*, 972 A.2d 53, 60 (Pa. Cmwlth. 2009) (citing *Meggett v. Pennsylvania Department of Corrections*, 892 A.2d 872, 879 n.13 (Pa. Cmwlth. 2006)).  The record includes pleadings, depositions, answers to interrogatories, admissions, affidavits and reports signed by expert witnesses.  *Id.*;

Pa. R.C.P. No. 1035.1. Thus, in ruling on a motion for summary judgment or summary relief, "a court must consider not only the pleadings but other documents of record, such as exhibits.'" *Borough of Bedford*, 972 A.2d at 60 (quoting *American Federation of State, County and Municipal Employees, AFL-CIO v. Commonwealth*, 533 A.2d 785, 788 (Pa. Cmwlth. 1987)).

## B. Duty of Fair Representation

In a duty of fair representation case, "[a] union is guilty of unfairly representing an employee if its refusal to carry a grievance through to arbitration is due to arbitrariness, discrimination or bad faith." *Dorfman v. Pennsylvania Social Services Union-Local 668 of Service Employees International Union*, 752 A.2d 933, 936 (Pa. Cmwlth. 2000) (quoting *Fouts v. Allegheny County*, 440 A.2d 698, 701 (Pa. Cmwlth. 1982); *accord Vaca v. Sipes*, 386 U.S. 171 (1967). A union's actions may be considered arbitrary "only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness . . . as to be irrational." *Connelly v. Steel Valley Education Association*, 119 A.3d 1127, 1134 (Pa. Cmwlth. 2015) (quoting *Air Line Pilots Association, International v. O'Neill*, 499 U.S. 65, 67 (1991) (internal citations omitted)).

The public employee bears the burden of proof. *Garzella v. Borough of Dunmore*, 62 A.3d 486, 494-95 (Pa. Cmwlth. 2012). To succeed on a claim or survive a summary judgment motion, the public employee "must allege arbitrariness, discrimination or bad faith on the union's part by specific facts; mere conclusory allegations in the pleadings without supporting factual allegations are not sufficient." *Dorfman*, 752 A.2d at 936; *accord Hughes v. Council 13, American Federation of*

8

*State, County and Municipal Employees, AFL-CIO*, 629 A.2d 194, 195 (Pa. Cmwlth. 1993), *aff'd*, 640 A.2d 410 (Pa. 1994). The employee must adduce evidence of bad faith by the union to support his claim. *Hughes*, 629 A.2d at 195.

Moreover, it is the union's decision to process a grievance to arbitration. *Martino v. Transport Workers' Union of Philadelphia, Local 234*, 480 A.2d 242, 250 n.12 (Pa. 1984). "A labor union has broad discretion to receive, pass upon and withdraw grievances" on behalf of the employees it represents. *Hughes*, 629 A.2d at 195; *see Ziccardi v. Department of General Services, Bureau of Buildings and Grounds*, 456 A.2d 979, 981 (Pa. 1982). In exercising this judgment, unions must recognize and decline to process frivolous and meritless grievances. *Martino*, 480 A.2d at 250 n.12. Otherwise, unions would be forced to take all grievances to arbitration regardless of their merit in order to avoid lawsuits from its members. *Id.* "That high standard insulates the union from exposure where, after a proper exercise of discretion, it declines to process a frivolous and meritless grievance." *Id.*

A union may be held liable to its members for acts of bad faith, but not for negligence in processing a grievance. *Martino*, 480 A.2d at 250 n.12. A determination that a grievance is frivolous must be "so woeful as to constitute bad faith." *Id.* Mere negligence is not enough. *Id.*; *Ziccardi*, 456 A.2d at 981.

With these principles in mind, we review the Union's Application to determine whether it is entitled to summary relief.

### 1. Timeliness of the Grievances

First, Petitioner claims that the Union breached its duty of fair representation by not timely filing grievances on his behalf. First Amended

9

Complaint at 1, ¶¶VIII-IX. Although Petitioner presented his grievances to the Union in July 2015, the Union did not file them on his behalf until October 2015. *Id.*

The Addendum provides that grievances concerning application, meaning, or interpretation of Article 28, Section 1 of the Union's CBA (prohibiting discharge, demotion, suspension or discipline without just cause) will be processed in accordance with the grievance process outlined in Article 37 (grievances and arbitration/standard grievance procedure) and Appendix T of the CBA. Union's Brief in Support of its Application for Summary Relief, Exhibit 7 to Exhibit A. The Addendum further provides that the provisions of Article 28, Section 1 do not apply to employees in the temporary clerical wage employee classification with less than 18 months of continuous employment with PHEAA. *Id.* In addition, the CBA provides that grievances must be presented orally or in writing to the employee's immediate supervisor within 15 working days of the date of the occurrence or when the employee knew or by reasonable diligence should have known of the occurrence.[4] *See* Petitioner's Answer in Opposition to Summary Relief Motion at 1; N.T. at 84, 87.

Petitioner testified that, on or before July 7, 2015, he communicated his grievances to Sprenkle. Sprenkle advised him that, as a probationary employee with constricted rights under the Addendum, he did not have a case against PHEAA. N.T. at 45-46. Petitioner testified that Sprenkle relayed the same information to him during a September 2015 conversation. N.T. at 48-49. Petitioner admitted that he

---

[4] We note that neither party attached this section of the CBA to their filings in this matter. However, as noted by the Union in its reply brief, the CBA is available at https://www.afscme13.org/wp-content/uploads/AFSCME-2019-2023-Agreement.pdf (last visited: March 2, 2021).

10

was a probationary employee, employed with PHEAA for less than 18 months, and that he was not a member of the Union during his employment with PHEAA. N.T. at 20.

As for the timeliness, although Petitioner received the final written warning on March 9, 2015, for excessive Internet usage, he did not inform the Union of the discipline until sometime between April (after he was denied a promotion) and July 2015 -- well beyond 15 working days of the date of the occurrence. *See* First Amended Complaint at 1, ¶VIII; N.T. at 40, 43, 52, 59, 61-62, 84-85. As for the promotion grievance, Petitioner became aware he was denied a promotion for a customer service representative position in either April or May of 2015, but he did not meet with a union representative until May or June of 2015. *See* First Amended Complaint at 1, ¶VIII; N.T. at 31-32, 87. However, Petitioner disputes the Union's representation that the deadline to file a grievance under the CBA is limited to 15 working days because the CBA also includes a reasonable diligence clause. Petitioner's Answer in Opposition to Summary Relief Motion at 1; N.T. at 85-86. Petitioner claims that he did not pursue a grievance of the final warning until he learned that this disciplinary action was used against him in the promotion rejection. N.T. at 11.

Although there are some facts in dispute, these facts are not material to our disposition. Reviewing the evidence of record in the light most favorable to Petitioner, we are unable to conclude that the Union acted arbitrarily, discriminatorily or in bad faith with regard to the filing of the grievances. Rather, according to Petitioner's own testimony, the reason the Union did not initially file the grievances on Petitioner's behalf was because Sprenkle believed that they lacked merit. The Union assessed the merits of Petitioner's grievance based upon the

11

language of the Addendum and CBA and determined Petitioner was a probationary employee lacking just cause protection and his grievances were untimely. The Union's initial refusal and delay in submitting Petitioner's grievances based on its assessment that they lacked merit does not demonstrate that the Union acted arbitrarily, discriminatorily or in bad faith. *See Hughes*, 629 A.2d at 195-96. Even if the Union's assessment was flawed, at best, the Union acted negligently; however, mere negligence is not enough. *Martino*, 480 A.2d at 250 n.12.

### 2. Union's Communication

Next, Petitioner contends that the Union breached its duty of fair representation by not communicating with him. Specifically, Petitioner alleges that between April 26, 2016, when the Union presented its position in a third-step grievance meeting with PHEAA, and June 10, 2016, when the Union informed Petitioner that it concurred with PHEAA, communication was "nonexistent." First Amended Complaint at 1, ¶¶X-XI.

The evidence adduced reveals that, on April 26, 2016, following a third-step grievance meeting, Petitioner sent an email to Chivis asking questions, suggesting legal strategy and requesting a copy of PHEAA's presentation packet. Union's Brief in Support of its Application for Summary Relief, Exhibit C. He sent another email to her on April 30, 2016, again offering legal strategy and renewing his request for information. *Id.* Petitioner testified that Chivis did not respond until June 10, 2016, when she advised him that the Union concurred with PHEAA and would not pursue his grievances. N.T. at 169. On June 17, 2016, the Union provided Petitioner with a copy of PHEAA's presentation packet. *Id.*

12

Although Chivis may not have responded to Petitioner as quickly as he would have liked, no facts have been pleaded or evidence presented by which this Court could infer that the Union's failure to communicate with Petitioner during this time was arbitrary, discriminatory or in bad faith.

### 3. Union's Investigation

Lastly, Petitioner contends that the Union breached its duty of fair representation by failing to investigate his claims. Petitioner presented his grievances to the Union in July 2015, but the Union took no further action to investigate his claims until Petitioner contacted it again in October 2015. First Amended Complaint at 1, ¶¶VIII-IX, XI. Having failed to conduct its own investigation, the Union concurred with PHEAA regarding the merits of Petitioner's grievances and chose not to proceed to arbitration. First Amended Complaint at 1, ¶XI. Petitioner disputes the Union's position that his refusal to give names of promoted employees impeded the Union's ability to investigate his promotion grievance. *See* Petitioner's Answer in Opposition to Summary Relief Motion at 1-2.

The Union initially determined that Petitioner's grievances lacked merit based on his probationary status because he did not have just cause protection and the untimeliness of his grievances. N.T. at 45-46, 48-49, 86, 104. Petitioner himself conceded that the Addendum did not entitle him to just cause protection. N.T. at 171. At the time of his discharge, Petitioner was on a final written warning for excessive Internet usage. Union's Brief in Support of its Application for Summary Relief, Exhibit 2 to Exhibit A; N.T. at 21-22, 90, 129.

13

Notwithstanding the Union's initial assessment regarding the merits of Petitioner's grievances, the Union filed grievances on Petitioner's behalf. Although Petitioner claims that the Union never investigated his termination grievance, he admitted that Schwanger met with him, reviewed his case, and formulated a statement for him for the April 2016 third-step grievance meeting with PHEAA. N.T. at 181. At the meeting, PHEAA presented evidence of Petitioner's inappropriate Internet usage during work hours, which included viewing images of guns and a weapons search for computer models of German submachine guns. Union's Brief in Support of its Application for Summary Relief, Exhibit C (PHEAA's Presentation Packet). After receiving and reviewing PHEAA's evidence, the Union declined to move forward with the termination grievance. First Amended Complaint at 1, ¶XI; N.T. at 171.

As for the promotion grievance, Petitioner testified that an unnamed Union representative asked Petitioner to identify persons involved so that she could investigate their statistics, *i.e.*, the data used to promote them. N.T. at 75, 81, 92. The representative said she could not acquire employee records unless Petitioner provided specific names. N.T. at 96. However, Petitioner testified that he preferred not to provide any names and, in the end, did not provide any names to the Union. N.T. at 91-92. Petitioner stated he was uncomfortable naming specific people and suggested that the Union could simply investigate all promotions, as "a random sampling," without identifying any names to see if the promotions were lawful. N.T. at 92. The Union representative advised that she could not investigate his grievance without additional information. N.T. at 91-92. Notwithstanding, the Union did pursue the promotion grievance on Petitioner's behalf on the little information it had, but not beyond the third-step grievance meeting.

14

Upon review, the evidence does not demonstrate that the Union acted arbitrarily, discriminatorily, or in bad faith. The Union determined that the grievances lacked merit based upon its review of the CBA/Addendum, Petitioner's account, and PHEAA's evidence. In this regard, the Union exercised its broad discretion to receive, pass upon and withdraw grievances. *See Hughes*, 629 A.2d at 195. Although some facts remain in dispute, these facts are not material to our disposition of this matter. Even accepting Petitioner's claim that the Union could have analyzed statistical information without the names of promoted employees, this would not alter the outcome. The Union's reluctance to perform a statistical analysis when Petitioner could have readily aided the investigation by supplying the names of promoted personnel falls within its discretionary authority in processing a grievance and hardly amounts to conduct that is so far outside a wide range of reasonableness as to be irrational. *See Connelly*.

## IV. Conclusion

Although it is apparent that Petitioner did not agree with the Union's interpretation of the Addendum/CBA or its assessment that his grievances lacked merit, in order to defeat the Application, Petitioner was required to point to facts in the record from which this Court could conclude that the Union acted arbitrarily, discriminatorily, or in bad faith. Despite extensive discovery, Petitioner has not uncovered any evidence to support such a conclusion. Thus, we conclude that the Union is entitled to summary relief. Accordingly, we grant the Union's Application and dismiss Petitioner's Amended Complaint with prejudice.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Quentin Salem,                                    :
                                                  :
                        Petitioner                :
                                                  :
            v.                                     :   No. 478 M.D. 2017
                                                  :
American Federation of State,                     :
County, and Municipal Employees                   :
Council 90 (AFSCME 90)                            :
Pennsylvania Higher Education                     :
Assistance Association (PHEAA),                   :
                                                  :
                        Respondents               :

**PER CURIAM**

# **O R D E R**

AND NOW, this 25<u>th</u> day of <u>March</u>, 2021, Respondent American Federation of State, County, and Municipal Employees Council 90's Application for Summary Relief is GRANTED and Petitioner Quentin Salem's First Amended Complaint is DISMISSED WITH PREJUDICE.