**Joseph R. WEBER, Plaintiff,**

**v.**

**John E. POTTER, Postmaster General of the United States Postal Service; National Association of Letter Carriers, AFL–CIO, Keystone Branch # 157, Defendants.**

No. 03–2989.

United States District Court, E.D. Pennsylvania.

Oct. 4, 2004.

---

Joseph R. Weber, Philadelphia, PA, Plaintiff Pro Se.

*MEMORANDUM AND ORDER*

ANITA B. BRODY, District Judge.

## I. INTRODUCTION

Plaintiff Joseph Weber ("Weber") is an employee of the United States Postal Ser-

vice ("USPS") and a member of the National Association of Letter Carriers, AFL–CIO, Keystone Branch # 157 ("NALC" or "the Union").[1] Weber brings this suit against defendant John Potter, Postmaster General of the USPS,[2] for breach of the collective bargaining agreement ("CBA") under 39 U.S.C. § 1208(b) and violations of his First, Fifth and Fourteenth Amendment rights under the United States Constitution. Weber brings this suit against the NALC for breach of the Union's duty of fair representation under 29 U.S.C. § 159(a),[3] breach of the CBA, and violations of his First, Fifth and Fourteenth Amendment rights under the United States Constitution. The court has subject matter jurisdiction over this case based on the existence of a federal question. Presently before me are defendants' motions for summary judgment. For the reasons set forth below, defendants' motions are granted.

## II. FACTUAL BACKGROUND[4]

### A. Events Leading to the Grievance

On Saturday, November 2, 2002, after several weeks of sick leave, Weber went to the Roxborough post office, his usual job site, turned in medical documentation explaining his absence and attempted to return to work by punching in on the time clock. (Def. USPS's Mot. for Summ. J., Ex. 4 at 4.) Derrick Lewis, Weber's supervisor, informed Weber that before he could resume working, he had to be cleared by the USPS medical unit. (*Id.*, Ex. 4 at 5.) Weber then requested the following items from Lewis: his most recent paycheck and paystub; Postal Service Form 3972, which lists the dates that one has worked and was necessary for Weber to file a workers compensation claim; and Form 3956, which would authorize Weber to go immediately to the USPS's medical unit in order to get cleared for work. (*Id.*) When Lewis failed to give Weber these items, Weber started demanding them in a loud voice. (Weber Dep. at 112; Def. USPS's Mot. for Summ. J., Ex. 5.) Lewis asked Weber to leave, saying that he was going to call the Postal Police. Weber left the building. (*Id.*, Ex. 4 at 5–6.)

Weber received his paycheck and paystub on Wednesday, November 6th, when he returned to the Roxborough office to speak with the acting manager Girard Car-

---

1. Pursuant to 39 U.S.C. § 1203(a), the NALC is the exclusive collective bargaining representative for employees of the USPS.

2. While Postmaster General Potter is the named defendant in this case, I will refer to the USPS as the defendant.

3. In the typical case where the employer is in the private sector, the employer's duty to abide by the terms of the CBA is governed by section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and the union's duty of fair representation is implied from section 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a). The USPS is not an employer within the meaning of the LMRA, but the court has jurisdiction of this action pursuant to section 1208(b) of the Postal Reorganization Act, 39 U.S.C. § 1208(b). In general, courts have applied the principles applicable to non-governmental entities under the LMRA to suits for breach of contract brought against the USPS under the Postal Reorganization Act. *McLean v. United States Postal Service*, 544 F.Supp. 821, 825 n. 9 (W.D.Pa.1982) (citing *Nat'l Ass'n of Letter Carriers, AFL–CIO v. U.S. Postal Service*, 590 F.2d 1171 (D.C.Cir.1978); *Columbia Local, American Postal Workers Union, AFL–CIO, v. Bolger*, 621 F.2d 615 (4th Cir.1980); *Nat'l Ass'n of Letter Carriers v. Sombrotto*, 449 F.2d 915 (2d Cir.1971)).

4. Because defendants move for summary judgment, the facts are set forth in the light most favorable to plaintiff. *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir.1997). Plaintiff is *pro se* and his response to defendants' motions did not provide any evidence that a material dispute of fact exists.

rozza. (Weber Dep. at 122–23.) Carrozza explained to Weber that he had expected Weber to come earlier in the week, and therefore had removed Weber's paycheck from the usual location in the safe and put it in his own desk drawer for easier access. Carrozza told Weber that this was the reason Lewis could not find the check on November 2nd. (*Id.* at 177–78.) Carrozza also gave Weber a memorandum describing how employees who, like Weber, had been out on more than 21 days of sick leave could get certified to return to work. (*Id.* at 122) The USPS faxed Form 3972 to the NALC who gave it to Weber. (Ex. 15; Weber. Dep. at 131.) After faxing additional medical information to the USPS medical unit, Weber was cleared to resume work and he returned to work on November 13th without ever needing Form 3956. (Weber Dep. at 165.)

## B. The Grievance Process

Article 15 of the CBA between the USPS and the NALC governs the grievance-arbitration procedure for USPS employees. (Def. USPS's Mot. for Summ. J., Ex. 16 at 66–78.) Under the CBA, after informal talks between the aggrieved employee and his immediate supervisor, a grievance proceeds through two formal steps of discussion between NALC representatives and USPS representatives. If the grievance is not resolved at Step A or Step B, it proceeds to arbitration. At both steps of the discussion, "the grievant shall be represented for all purposes by a steward or a Union representative who shall have authority to resolve the grievance." (*Id.*, Ex. 16 at 67.) It is also the responsibility of the union representative to "make a full and detailed statement of facts relied upon, contractual provisions involved, and remedy sought." (*Id.*)

Weber contacted union representative Geary Wertz on or about Monday, November 4, 2002, and indicated that he wanted to file a grievance in connection with the November 2nd events. (*Id.*, Ex. 7.) Weber believed that Wertz had handled some of Weber's past grievances well. (Weber Dep. at 9–10, 14–15.) On November 11th, Weber gave Wertz a letter detailing the November 2nd events, the CBA articles that Weber believed were violated and his requested relief. (Def. USPS's Mot. for Summ. J., Ex. 4.) Wertz reviewed Weber's letter and attachments before filling out the Step A Grievance Form. (Wertz Decl. ¶ 5.) Wertz stated that the USPS did not violate the CBA articles that Weber listed in his November 11th letter, but they might have violated CBA articles 2, 15 and 19.[5] (*Id.* ¶ 6; Ex. 13.) Therefore, the CBA articles that Wertz raised in the Step A Grievance Form differed from the articles that Weber listed in his letter. Wertz did attach Weber's November 11th letter to the Step A Grievance Form. (Attach. to Compl.)

The Step A grievance meeting took place on November 21, 2002. Wertz represented the NALC and Weber, and Carrozza represented the USPS. (Def. USPS's Mot. for Summ. J., Ex. 13 & Ex. 15.) Weber was not present at this meeting. Weber's grievance was not resolved at this meeting and proceeded to the next step of the grievance-arbitration procedure. The Step B grievance meeting took place on December 9, 2002. Randy Zebin and Gracie Scott represented the NALC and the USPS, respectively. (*Id.*, Ex. 15.) Once again, Weber was not present at this meet-

---

5. Art. 2 of the CBA governs nondiscrimination and civil rights, Art. 15 governs the grievance-arbitration procedure, and Art. 19 governs handbooks and manuals. Weber's letter listed the following articles as being violated: Art. 21.4, governing injury compensation; Art. 10, governing leave; and Art. 8, governing hours of work.

ing. The Step B team resolved the grievance, finding that the CBA articles listed on the grievance form had not been violated. (*Id.*) The Step B team acknowledged that Weber had a right to receive his paycheck and Form 3972 when he requested them on November 2nd and that he did not receive them. They found, however, that Weber received both items shortly afterwards. Because the paycheck had merely been put in another location, Form 3972 had been faxed to the Union, and Weber never needed Form 3956 in order to return to work, the Step B team found that these were not discriminatory acts nor egregious violations of the CBA deserving the relief requested by Weber. (*Id.*) The Step B team resolved Weber's grievance as being without merit and the grievance did not proceed to arbitration. (*Id.*)

### C. *The Current Lawsuit*

In the current lawsuit, Weber alleges the following: (1) defendants USPS and NALC breached article 15 of the CBA when they failed to properly address Weber's grievance (Compl. at 7); (2) defendant NALC breached its duty of fair representation when it failed to properly frame the issues in Weber's grievance (Compl. at 8); and (3) defendants USPS and NALC violated Weber's First, Fifth and Fourteenth Amendment rights when they failed to properly address Weber's grievance and failed to include Weber in the grievance discussions (Compl. at 9–11).

Weber clearly indicated in his deposition that this lawsuit does not concern the November 2nd events leading to his grievance. Rather this lawsuit concerns whether defendants breached any duty towards Weber or violated any of Weber's constitutional rights when they addressed his grievance as described in Wertz's Step A

Grievance Form rather than as described in Weber's November 11th letter:

> Whatever happened on November 2nd or after that regarding the Post Office and what they did no November 2nd is not part of this lawsuit. My lawsuit concerns two dates, and that would be November 21st [the date of the Step A grievance meeting] and I believe December 9th of 2002 [the date of the Step B grievance meeting]. Why at both steps of the grievance did—the grievance was denied under Article 2, 15, and 19 when I never raised Articles 2, 15, and 19. I feel that it was a breach of contract, because if I didn't raise those Articles in the grievance, they should have never become part of the grievance.

(Weber Dep. at 60.)

### III. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), "[s]ummary judgment should be granted if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham,* 120 F.3d 392, 395 (3d Cir.1997).

### IV. DISCUSSION

A. *Duty of Fair Representation Claim Against the NALC and Breach of Contract Claim Against the USPS*

 Federal labor law policy generally requires that employees exhaust any grievance procedure provided in the union's collective bargaining agreement before they can assert a contract grievance against their employer in federal court. *Seborowski v. Pittsburgh Press Co.,* 188 F.3d 163, 168 (3d Cir.1999) (citing *Vaca v. Sipes,* 386 U.S. 171, 184, 87 S.Ct. 903, 17

L.Ed.2d 842 (1967)). The result reached under the CBA's grievance procedure is generally final and binding, unless the employee can show that the union breached its duty of fair representation in processing the grievance. *Griesmann v. Chemical Leaman Tank Lines, Inc.,* 776 F.2d 66, 72–73 (3d Cir.1985); *DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163–63, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In such "hybrid suits," where the employee sues the employer for breach of contract and the union for breach of its duty of fair representation, the employee must prove both charges in order to prevail against either defendant. *Id.* Weber alleges that the USPS breached the CBA and that the NALC breached its duty of fair representation. Weber can only prevail in his breach of contract claim against the USPS if he can also show that the NALC breached its duty of fair representation. Therefore, I will address that claim first.

■ In their motions for summary judgment, both defendants argue that Weber fails to show that the NALC breached its duty of fair representation. A union breaches this duty "only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith." *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). With regards to the grievance procedure, a union has "broad discretion in its decision whether and how to pursue an employee's grievance against an employer," *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 567–68, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990), and may "settle or even abandon a grievance, so long as it does not act arbitrarily." *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir. 1970). A union acts arbitrarily only when its behavior is "so far outside a wide range

of reasonableness as to be irrational." *Air Line Pilots Ass'n Int'l v. O'Neill,* 499 U.S. 65, 67, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991). Without a showing of bad faith or arbitrariness, mere proof of negligence or poor judgment on the part of the union is not enough to support a claim of unfair representation. *Findley v. Jones Motor Freight, Division Allegheny Corp.,* 639 F.2d 953 (3d Cir.1981) (citing *Bazarte,* 429 F.2d at 872).

■ Weber claims that the NALC breached its duty of fair representation because the CBA articles that the NALC cited in processing his grievance differed from the articles that Weber believed should have been cited. However, a union has broad discretion to determine what issues to raise in a grievance proceeding and how those issues are to be raised. *Chauffeurs,* 494 U.S. at 567–68, 110 S.Ct. 1339. Weber himself acknowledged that as a union steward, he sometimes told members that he believed they did not have a valid grievance or that he thought their grievances should be brought under different articles. (Weber Dep. at 62–63.) Weber also acknowledged that a union has no obligation to file a grievance. (*Id.* at 64.)

There is no dispute as to any material fact in this case. Weber does not dispute that both the Step A and Step B grievance teams discussed the events which formed the basis of his grievance. Weber also does not dispute that the NALC included Weber's November 11th letter, which listed the CBA articles he believed were at issue, in the grievance package given to the Step A and Step B teams. Weber provides no evidence that union representative Wertz was acting in bad faith or arbitrarily when he filled out the Step A Grievance Form. The NALC, on the other hand, has provided evidence that Wertz reviewed Weber's November 11th letter

and attachments before deciding which articles to cite in the Step A Grievance Form. Even if Wertz exercised poor judgment in doing this, Weber does not allege nor show any evidence that Wertz's actions were in bad faith or arbitrary. There is no evidence that the members of the Step B team did not consider Weber's November 11th letter. In fact, Zebin, the union representative at the Step B meeting, told Weber that he read his statements. (Weber Dep. at 233.)

■ Weber fails to show that the NALC acted "arbitrarily, discriminatorily, or in bad faith" in processing his grievance. On the contrary, the only evidence before me indicates that the NALC pursued Weber's grievance through all available steps up to arbitration and fully considered Weber's description of events. "[B]are assertions" of arbitrary or bad faith conduct by the union cannot survive a motion for summary judgment. *Masy v. New Jersey Transit Rail Operations, Inc.*, 790 F.2d 322, 328 (3d Cir.1986). Therefore, defendants' motions for summary judgment with respect to the claim that the NALC breached its duty of fair representation is granted.

■ Because Weber cannot succeed in his breach of contract claim against the USPS without showing that the NALC breached its duty of fair representation, *DelCostello*, 462 U.S. at 163–63, 103 S.Ct. 2281, I also grant defendant USPS's motion for summary judgment with respect to Weber's breach of contract claim.

### B. Contract Claims Against the NALC

■ Weber also alleges that the NALC breached the CBA because the articles that the NALC cited in Weber's grievance differed from the articles that Weber cited in his November 11th letter.[6] According to Weber, the NALC's actions violated article 15 of the CBA which governs grievance-arbitration procedures. However, article 15 states that throughout Formal Steps A and B of the grievance-arbitration procedures, "the grievant shall be represented for all purposes by a steward or a Union representative who shall have authority to resolve the grievance." (Def. USPS's Mot. for Summ. J., Ex. 16 at 67.) Under article 15, it is also the responsibility of the union representative to "make a full and detailed statement of facts relied upon, contractual provisions involved, and remedy sought." (*Id.*) The NALC's actions in handling Weber's grievance followed the provisions of the CBA. Weber was represented by union representatives Wertz and Zebin in both steps

---

**6.** It is not immediately clear whether a contract claim by a union member against his union for breach of a collective bargaining agreement, and not breach of the union's constitution, *see, e.g., Wooddell v. In'l Brotherhood of Electrical Workers, Local 71*, 502 U.S. 93, 112 S.Ct. 494, 116 L.Ed.2d 419 (1991), or breach of the duty of fair representation, *see, e.g., Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), is possible. Any state common law breach of contract claim would be preempted by federal labor law. *See Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Individual employee suits brought under section 301 of the Labor Management Relations Act, the analogy to section 1208 of the Postal Reorganization Act under which this suit is brought, are usually hybrid suits against the employer for breach of the CBA and the union for breach of the duty of fair representation. *See, e.g., DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). Although I have been unable to find any cases by the Third Circuit in which a union member sued his union for breach of a CBA, the D.C. Circuit has held that such suits are possible. *See O'Hara v. District No. 1–PCD*, 56 F.3d 1514 (D.C.Cir. 1995). Because the facts in this case are clear that the NALC did not breach the CBA, I will not address whether such a claim is actually feasible in the Third Circuit.

of the proceeding. As is required by the CBA, Wertz made a statement of facts, outlined the contractual provisions involved and the remedies sought in the grievance. Finally, Zebin, who had the authority to resolve Weber's grievance under the CBA, did so at the Step B meeting. Because Weber has not shown how the NALC's actions during his grievance proceedings violated the CBA, his breach of contract claim must fail.

## C. Constitutional Claims Against the NALC

 Plaintiff brings claims under the United States Constitution against the NALC for violating his First, Fifth, and Fourteenth Amendment rights. However, the NALC is a private non-governmental entity. Therefore, Weber cannot assert a constitutional claim against the NALC without first establishing that it was a "state actor" acting under color of law. *Blum v. Yaretsky*, 457 U.S. 991, 1002, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982); *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982). *See also Jackson v. Temple Univ.*, 721 F.2d 931 (3d Cir.1983) (affirming summary judgment because plaintiff provided no evidence of state action when a union refused to take grievance to arbitration). Because Weber does not assert that the NALC acted on behalf of the state and there is no evidence to support such an assertion, defendant NALC's motion for summary judgment with respect to Weber's constitutional claims is granted.

## D. Constitutional Claims Against the USPS

 Weber also claims that the USPS violated his free speech, due process and equal protection rights under the United States Constitution. Weber's free speech claim fails because his complaint does not allege what protected speech was restricted nor how the USPS allegedly restricted it. Weber also fails to state an equal protection claim in that his complaint does not allege how he was treated differently from other similarly situated persons.

 Weber is asserting a procedural due process claim. It fails because in a case against a public employer "where an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which he is entitled." *Dykes v. Southeastern Pennsylvania Transportation Authority*, 68 F.3d 1564, 1565 (3d Cir.1995). Grievance-arbitration procedures under CBAs have "incorporated safeguards adequate to resolve ... allegations in a manner consistent with the demands of due process." *Id.* at 1572; *see also Jackson v. Temple Univ.*, 721 F.2d 931, 933 (3d Cir.1983). In making this determination, the Third Circuit relied upon the fact that an employee can request his or her union to proceed to arbitration if unsatisfied with the results of a grievance proceeding. Although the union can decide not to take the employee's claim to arbitration or can resolve a grievance before arbitration, it does so under a duty of fair representation and may be sued for breach of that duty. *Dykes*, 68 F.3d at 1572. If a plaintiff does not allege that the public employer interfered with the union's decisions in the grievance process, then the plaintiff's due process claims are properly dismissed. *See Jackson*, 721 F.2d at 933. Hence, under *Dykes* and *Jackson*, a plaintiff must show that the grievance/arbitration procedure under the CBA was inadequate or that the USPS did not follow it.

Weber's complaint fails to allege and Weber provides no evidence that the grievance/arbitration procedure prescribed in the CBA is inadequate. The same safe-

guards which the Third Circuit found adequate in *Dykes* and *Jackson* also exist in this case: Weber has the right to request the union to take his grievance to arbitration and if the union fails to do so, Weber can sue the union for violating its duty of fair representation. Rather than alleging that the grievance/arbitration procedures under the CBA are inadequate, Weber relies on the CBA in making his claims against the USPS, alleging that it failed to comply with the CBA.

There is also no evidence that the USPS failed to follow the grievance/arbitration procedure under the CBA. Weber alleges that the USPS violated the CBA and his due process rights when it did not consider the specific CBA articles that he raised in his November 11th letter and when it failed to include plaintiff in the grievance proceedings. However, it is the responsibility of the NALC and not the USPS to decide which articles to raise in grievance proceedings. Defendant USPS fulfilled its obligations under the grievance-arbitration procedures established by the CBA when it attended the Step A and Step B meetings and considered the issues as they were raised by the NALC. Likewise, there is no indication that the USPS was responsible for Weber's absence at the grievance discussions. The text of the CBA is silent as to whether the grievant has a right be present at all stages of the grievance-arbitration proceedings, and there is no evidence on the record to indicate that Weber requested and was denied permission to attend the Step A and Step B discussions. Because there is no evidence that the USPS interfered with the NALC's decision on how to frame Weber's grievance and because there is no evidence that the USPS prohibited Weber from attending the grievance proceedings, I find that Weber has failed to establish a due process claim against the USPS.

## V. CONCLUSION

For the reasons set forth above, defendants motions for summary judgment are granted as to all of plaintiff's claims.

## *ORDER*

AND NOW, this 4th day of October 2004, it is **ORDERED** that defendants' motions for summary judgment (Docket # 16 and # 19) are **GRANTED** and this case is **DISMISSED WITH PREJUDICE**. Judgment is entered in favor of defendants and against plaintiff.