# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie M. Miles,  
                Appellant

          v.

FOP Lodge #5 and  
City of Philadelphia

:
:
:
:
:
:
:
:
:

No. 966 C.D. 2018  
Submitted: March 15, 2019

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge  
               HONORABLE ROBERT SIMPSON, Judge  
               HONORABLE MICHAEL H. WOJCIK, Judge

OPINION BY  
JUDGE COHN JUBELIRER           FILED: August 23, 2019

Jamie M. Miles, pro se, appeals from the Order of the Court of Common Pleas of Philadelphia County (common pleas) that dismissed Miles' Motion to Vacate Arbitration Award (Motion) for lack of standing. Common pleas held that, absent language in a collective bargaining agreement (CBA) allowing otherwise, the right to appeal an unfavorable arbitration award belongs to the parties to the CBA, here FOP Lodge #5 (Union) and the City of Philadelphia (City), and, therefore, only they have standing to appeal the Arbitration Award that upheld the City's discharge of Miles from her position as a City police officer.[1]

---

[1] Miles had worked as a City police officer for 10 years.

The issue before this Court is narrow: whether Miles has standing[2] to appeal the unfavorable Arbitration Award where Union did not represent her in her Arbitration due to a conflict, instead authorizing her and her private counsel to pursue her case. Union and the City assert this Court recently held that, under this CBA and the parties' past practices, an individual grievant may not appeal an unfavorable arbitration award. *FOP Lodge #5 v. City of Philadelphia*, 182 A.3d 1076 (Pa. Cmwlth. 2018) (*Herder*). Miles asserts her situation is unique because, due to Miles' ongoing lawsuit against Union and its counsel, Union did not represent or aid her during her arbitration proceedings, beyond providing her an allowance to pay her private counsel. Because Union did not participate in the Arbitration due to a conflict of interest, Miles maintains she has standing to appeal, since Union declines to do so. Miles further argues that Union breached its duty of fair representation in a variety of ways which, she contends, gives her individual standing to appeal the Arbitration Award. Based on the unique circumstances of this case, where, perceiving a conflict of interest, Union withdrew itself from participating in and making legal decisions about Miles' Arbitration, and instead authorized Miles to pursue her own Arbitration, *Herder* is distinguishable, and Miles may appeal the Arbitration Award. Accordingly, we vacate common pleas' Order and remand for further proceedings.

A detailed recitation of the underlying facts of Miles' employment and grievance is not necessary, but the following facts set the background for how the

---

[2] Although the issue before us is characterized as whether Miles has "standing" to appeal the Arbitration Award, our Supreme Court has recognized that the traditional "standing" paradigm does not apply to the appeal of an arbitration award. *Kozura v. Tulpehocken Sch. Dist.*, 791 A.2d 1169, 1172 n.6 (Pa. 2002). Instead, standing to appeal an arbitration award is one based on contractual rights and must be found in the applicable collective bargaining agreement. *FOP Lodge #5 v. City of Philadelphia*, 182 A.3d 1076, 1080 (Pa. Cmwlth. 2018) (*Herder*).

issue of Miles' standing arose. Union and the City are parties to a CBA. (Arbitration Award at 2.) The CBA contains grievance procedures, which culminate in final and binding arbitration before the American Arbitration Association (AAA). (*Id.*) In 2011, Miles was suspended and then discharged for allegedly falsifying public documents. Union grieved Miles' discharge through final and binding arbitration and prevailed, in part, obtaining her reinstatement but without back pay or benefits. The discipline underlying this arbitration award remained on Miles' record. Believing, among other things, that her 2011 discharge was retaliatory and that Union did not properly handle the arbitration, Miles filed a lawsuit in December 2014 against Union alleging it breached its duty of fair representation and against Union's counsel alleging legal malpractice.[3]

In May 2014, Miles became the subject of an internal investigation based on allegations that she falsified a document related to a May 28, 2014 automobile accident involving Miles' boyfriend. It was during this investigation that Miles initiated her lawsuit against Union and Union's counsel based on the prior arbitration. Following the investigation, Miles received a 30-day suspension with Notice of Intent to Dismiss on September 18, 2015. She later received a Notice of Dismissal "alleg[ing] that Miles had engaged in Conduct Unbecoming, Article 1, Section 010-10, specifically, '*Knowingly and willfully making a false entry in a department record or report*,'" and a charge of "Conduct Unbecoming, Article 1, Section 011-10, '*Abuse of Authority*.'" (Arbitration Award at 2.) Union filed a grievance on Miles' behalf on September 21, 2015, which the City denied. When

_____

[3] Per the Arbitration hearing transcript, Miles and Union settled this lawsuit some time prior to the conclusion of the Arbitration. Miles also initiated a lawsuit against the City premised on her hostile working conditions allegations, which, from the Arbitration hearing transcript, also appears to have settled.

the issue could not be resolved between the parties, Union referred the matter to AAA for arbitration.

In an October 29, 2015 letter to Miles, Union indicated it had filed a demand for arbitration with AAA challenging her discharge in order "to preserve [her] rights in the time limits provided by the CBA." (Union Letter to Miles, Oct. 29, 2015, (Letter) at 1.) However, noting that Miles had filed a suit against both Union and the "law firm that commonly represents [Union's] grievants in arbitration," Union expressed its "**belief that both [it] and the law firm would have a <u>conflict in pursuing this case on [her] behalf</u>**." (*Id.* (emphasis added).) In light of this conflict, Union stated:

a) [it] will pay not more than $5,000.00 to **an attorney of your choice to represent you in these proceedings**. The money will be paid on a monthly basis and is to be accompanied by an invoice and time sheets reflecting the professional services **performed on your behalf in pursuit of the Demand for Arbitration** during the preceding month; as well as any direct out of pocket expenses that may be incurred in that pursuit. With the exception of payment of arbitrator's fees and expenses as set forth below, **all other costs and expenses, including excess attorney's fees and costs that you incur, will be solely and exclusively your responsibility**.

b) The [Union] shall assume responsibility for the payment of all costs and fees imposed by the arbitrator and the [AAA] in the resolution of this matter.

You should have **your attorney** advise the undersigned in writing of his representation of you with regard to the arbitration. All bills and other communications from that attorney should be sent directly to the undersigned . . . .

The next step in the arbitration process is the selection of an arbitrator. We would assume **your attorney would want to participate in this process and select the arbitrator of his/her choice**. Accordingly, we have alerted the [AAA] to the fact that **you will be represented by private counsel in this matter** and the **[AAA] is to cooperate with**

**you**. Your attorney may contact the . . . case manager at the [AAA] for further instructions[.]

. . . .

I wish you the best of luck in **your efforts** to re-secure your employment.

(*Id.* (emphasis added).) Consistent with this letter, Miles hired a private attorney who represented her in the Arbitration proceedings.

Following an evidentiary hearing, at which both the City and Miles presented evidence, the Arbitrator denied the grievance. The Arbitrator concluded the City did not violate the CBA when it discharged Miles from her position because it had just cause for doing so, particularly given Miles' prior discipline for similar conduct. When neither Union nor the City appealed the Arbitration Award, Miles, pro se, filed the Motion with common pleas on January 9, 2017.[4] The City filed an Answer, in which it challenged Miles' standing to appeal the Arbitration Award, as well as the Motion's merits. (Record (R.) Item 6.) Union also filed an Answer in opposition to the Motion on the basis that Miles lacked standing to appeal the Arbitration Award because only it and the City, as the exclusive parties to the CBA, could file an appeal under the CBA's terms.[5] (R. Item 8.) Following a hearing and after considering the Motion and the responses thereto, common pleas denied the Motion for lack of standing by Order dated on April 4, 2017.

Miles appealed and, after she filed a Concise Statement of Errors Complained of on Appeal, common pleas issued a responsive opinion. Common pleas explained

---

[4] The Motion named both the City and Union as defendants, but Union, nonetheless, made an oral motion to intervene, which common pleas granted. Miles subsequently filed an amended Motion to Vacate Arbitration Award, with numerous documents attached, to which the City filed another Answer.

[5] Union adopted and incorporated the City's arguments related to Miles' lack of standing set forth in the City's Answer. Union took "no position as to the merits of [Miles'] substantive arguments." (Union's Memorandum of Law at 2 n.2.)

5

that, under the CBA, Union, "not . . . Miles, has the contractual right to appeal an arbitration award," citing *Bonifate v. Ringgold School District*, 961 A.2d 246, 253 (Pa. Cmwlth. 2008), and *Krenzelak v. Canon-McMillan School District*, 566 A.2d 346, 347-48 (Pa. Cmwlth. 1989), for the proposition that individual union members do not have standing to appeal an arbitration award unless the relevant collective bargaining agreement specifies otherwise. (Common Pleas Opinion (Op.) at 1 & n.1.) Common pleas concluded the CBA here does not specifically give individual union members appeal rights and, therefore, Miles did not have standing to appeal the unfavorable Arbitration Award. Common pleas further held that Miles could not "overcome this bar by alleging that [Union] breached its duty of fair representation in its handling of her claim at arbitration," citing "*Krenzelak*[, 566 A.2d] at 348 (holding that granting appellant's motion to vacate an arbitration award on the basis of unfair representation, even if proven, would not be appropriate and that 'an employee who believes a union has breached its duty of fair representation must file an independent action against the union . . . .')[.]" (Common Pleas Op. at 1 & n.2.)

On appeal,[6] Miles argues she has standing to appeal the Arbitration Award. She contends that Union, in this matter, deviated from its past practice and duty to represent her due to what Union saw as a conflict of interest, which makes her, not Union, the party to the present grievance Arbitration. Relying on Union's October 29, 2015 letter, Miles asserts Union was "conflicted out of her grievance" and she "reasonably believe[s this] granted [her] individual standing." (Miles' Brief at 19.) *Herder* is distinguishable, she argues, because, there, Union did represent the

___

[6] This Court's review of an order of common pleas dismissing a matter based on an individual grievant's lack of standing "is limited to determining whether [common pleas] committed an error of law, an abuse of discretion, or a violation of constitutional rights." *See Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 31 n.3 (Pa. Cmwlth. 2011) (granting a motion to quash a motion to vacate/modify an arbitration award based on the grievant's lack of standing).

grievant at the arbitration. Miles further argues she has standing because she "properly named [Union] as a defendant [in the Motion] and pled specific facts to show that [Union] actively participated in discrimination and failed in [its] duty [of] fair representation which led to the resulting [A]rbitration [A]ward."[7] (*Id.* at 21.)

As they did before common pleas, the City and Union argue that only they have standing to appeal an unfavorable arbitration award under the CBA and their past practices because they are the exclusive parties to that CBA, a position confirmed by this Court in *Herder*. It is only when a collective bargaining agreement provides individual union members the right to seek arbitration that the related right to appeal an adverse arbitration award arises, the City and Union argue. No such individual right can be found in the CBA here, they assert, again citing *Herder*. The City further argues that, to the extent Miles claims she has standing due to Union's alleged discrimination and failure to fairly represent her, such allegations do not create standing under the CBA. *See Krenzelak*, 566 A.2d at 348 (claims that a union breached its duty of fair representation are not bases on which to vacate an arbitration award as the remedy for such conduct is available in a separate action). For these reasons, the City and Union maintain that common pleas did not err or abuse its discretion in dismissing the Motion. Neither the City nor Union address Miles' arguments that the conflict that gave rise to Union's decision to withdraw from

---

[7] Miles asserts numerous arguments in her brief related to the merits of the underlying Arbitration Award, why that Arbitration Award should be vacated, and how Union and the City together acted in bad faith to deprive her of her rights under the CBA, thereby giving rise to a claim for damages under *Martino v. Transport Workers' Union of Philadelphia*, 480 A.2d 242 (Pa. 1984), and *Speer v. Philadelphia Housing Authority*, 533 A.2d 504 (Pa. Cmwlth. 1987). However, the only issue addressed by common pleas, and before this Court, is whether Miles has standing to appeal the Arbitration Award. We note, however, that, to the extent Miles maintains that the CBA does not vest the exclusive right in Union to pursue arbitration and, therefore, appeal an unfavorable arbitration award, this Court concluded otherwise in *Herder*, 182 A.3d at 1080.

7

representing Miles at the arbitration proceedings gives her standing to appeal the Arbitration Award.

"As a general principle, a union, not its individual members, controls the appeal of an arbitration award." *Herder*, 182 A.3d at 1079. This is because, "[g]enerally, collective bargaining agreements invest only the parties to the contract, *i.e.*, the union and the employer, with the authority to initiate arbitration and to decide whether to appeal an adverse arbitration award." *Ray v. Brookville Area Sch. Dist.*, 19 A.3d 29, 33 (Pa. Cmwlth. 2011). Placing the authority to decide whether to appeal an arbitration award in a union's control, rather than in an individual union member's control, reflects the belief that allowing otherwise

> would lead to chaos and a breakdown in the entire scheme of collective bargaining for which the parties have provided and contracted. Instead of being able to rely on the disposition of employee grievance, through the established machinery, the [employer] would face the constant threat of attempted individual enforcement through litigation. Union responsibility would be diminished and all parties would suffer.

*Id.* (quoting *McCluskey v. Dep't of Transp.*, 391 A.2d 45, 49 (Pa. Cmwlth. 1978), *disapproved of on other grounds*, *Official Court Reporters v. Pa. Labor Relations Bd.*, 467 A.2d 311, 320 n.17 (Pa. 1983) (plurality)).

There is an exception to this general principle where "the contractual language of the [collective bargaining agreement] provides individual union members with a **personal right** to seek arbitration." *Herder*, 182 A.3d at 1079 (emphasis added). In those circumstances, "a union member may appeal an adverse arbitration result if the union does not appeal." *Id.* at 1079-80. However, if a collective bargaining agreement does not expressly specify who may appeal an arbitration award, courts

will rely on who has the right to initiate arbitration or, if it is unclear as to who has that right, the parties' past practices to determine who may appeal an arbitration award. *Id.* at 1080-81.

In *Herder*, this Court examined the CBA between Union and the City and observed that the CBA neither explicitly stated who could appeal an arbitration award nor whether someone other than Union or the City could initiate a grievance or arbitration request. *Id.* at 1080. Accordingly, we considered evidence of the parties' past practices, which revealed that "for the last 30 years, without exception, only . . . Union or the City [could] demand arbitration under the grievance arbitration procedure in the CBA." *Id.* Relying on this evidence to interpret the CBA, we held that only Union and the City, "as the exclusive parties to the CBA," could appeal an arbitration award. *Id.* at 1081. Miles asserts that *Herder* is distinguishable because, unlike in that case, Union here did not represent her during the arbitration proceedings and, in fact, removed itself from those proceedings on the basis that it would have a conflict "in pursuing this case on [her] behalf." (Letter at 1.) We agree *Herder* is distinguishable.

A union has the duty to fairly represent its members throughout any grievance and arbitration process provided for by a collective bargaining agreement. During that process, "an individual employee **lacks direct control** over a union's actions taken on [the employee's] behalf," *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567-68 (1990) (emphasis added), and a "union has broad **discretion to determine what issues to raise** in a grievance proceeding and **how those issues are to be raised**," *Weber v. Potter*, 338 F. Supp. 2d 600, 606 (E.D. Pa. 2004) (citing *Chauffeurs*, 494 U.S. at 567-58) (emphasis added). Therefore, ordinarily, it is the union, as the exclusive representative of its members, that decides

9

whether to demand arbitration, to determine what issues should be raised at the arbitration, and to decide whether to appeal an unfavorable award. In *Herder*, Union represented the grievant throughout the underlying grievance and arbitration proceedings and exercised its discretion to determine how to proceed on the grievant's claims, including whether to appeal.

Here, in contrast, although Union initiated the grievance on Miles' behalf and demanded arbitration after the grievance process ended unfavorably, it, thereafter, **expressly withdrew its**, and its counsel's, **representation of Miles prior to the arbitration proceedings**. Stating that it and its counsel "would **have a conflict** in pursuing **this case** on [her] behalf" due to the suit Miles had initiated against Union and its counsel, Union authorized Miles to hire her own attorney and to pursue the Arbitration notifying the AAA that it was to cooperate with her. (Letter at 1 (emphasis added).) In essence, Union gave Miles direct control over the Arbitration, including the discretion to determine which issues to raise, and how they were to be raised.

In challenging Miles' standing, Union and the City rely on Union's contractual right, implied from the CBA, to decide whether to file an appeal and argue that it was Union, not Miles, which was the party to the Arbitration. However, after acknowledging the existence of a conflict that precluded its representation of Miles in "pursuing this case on [her] behalf," and withdrawing its representation of her **due to that conflict**, Union authorized Miles to "pursu[e] . . . the Demand for Arbitration" with private counsel acting on **her behalf**. (*Id.*) In doing so, Union effectively modified its implied authority under the CBA **in this instance** to allow Miles to substitute for it as the party of interest in the Arbitration, a modification to which the City agreed by proceeding with the Arbitration with Miles as the party of

10

interest.[8] This modification of Union's authority as to Miles' claims is apparent from Union's statements in the Letter, such as: that it **had a conflict** "in pursuing **this case on [her] behalf**"; that Miles' private counsel was responsible for contacting AAA to participate in selecting "the arbitrator **of his/her choice**"; and that Union "wish[ed] [Miles] the best of luck in **[her] efforts to re-secure [her] employment**." (*Id.* at 1-2 (emphasis added).) The Letter is likewise replete with language reflecting that Miles' private attorney was representing Miles', not Union's, interests as the party to the Arbitration[9] and that Miles was responsible for pursuing the Arbitration to whatever extent she decided. For example, Union provided $5000 to pay for an attorney of Miles' choice, but if Miles chose to exceed that amount she could do so at her own expense. Further, Union had advised the AAA that Miles was being "represented by private counsel in this matter and the [AAA was] to cooperate **with [Miles]**." (*Id*. at 2 (emphasis added).) Having modified its contractual authority in this Arbitration based on its conflict, Union cannot now rely on its prior authority to preclude Miles from proceeding "in this case" to "re-secure [her] employment." *Id.*

---

[8] An "agreement to modify need not be expressed in words; it may be inferred from acts and declarations of the parties inconsistent with the original contract." *Priester v. Milleman*, 55 A.2d 540, 545 (Pa. Super. 1947) (citing *Weldon & Kelly Co. v. Pavia Co.*, 46 A.2d 466, 468 (Pa. 1946)).

[9] This makes the present matter different from the conflicts analysis set forth in several federal court decisions addressing motions to disqualify counsel filed by union members in separate legal actions against their unions on the basis that counsel had "represented" the individual members during a previous arbitration proceeding. *See, e.g.*, *Harris v. City of Kansas City*, No. 18-2084, 2019 WL 1367672, *6 (D. Kan., filed March 26, 2019); *Adamo v. Hotel, Motel, Bartenders, Cooks & Rest. Workers' Union*, 655 F. Supp. 1129 (E.D. Mich. 1987); *Griesemer v. Retail Store Emps. Union*, 482 F. Supp. 312 (E.D. Pa. 1980); *Greene v. Indep. Pilots Ass'n*, No. 3:14-cv-00628, 2016 WL 6877745 (W.D. Ky. 2016). In those cases, the motions to disqualify were denied because the counsel represented the union, not the union member, at the arbitration proceedings and, therefore, it was the union that was the client during those proceedings. Here, it is apparent that Union was not the client during the Arbitration, Miles was, and it was Miles, along with her private counsel, who were responsible for making all the legal decisions related to the Arbitration.

11

Finally, Union's withdrawal was not limited only to the arbitration proceedings, but was broadly stated - Union "would have **a conflict in pursuing this case** on [her] behalf." (*Id.* at 1 (emphasis added).) Having removed itself from "**pursing this case** on [Miles'] behalf," (*id.* (emphasis added)), Union placed Miles in direct control of the legal decisions related to her Arbitration. No time frame was placed on Union's authorization of Miles in its Letter to pursue her case. The case continues, and Miles' pursuit of her **current** efforts to challenge her 2015 discharge **are ongoing**.

Thus, while the decision to appeal is firmly within a union's discretion, Union ceded its contractual authority to exercise that discretion as it relates to Miles' "efforts to re-secure [her] employment" due to its conflict, (*id.* at 2). Miles' "efforts to re-secure [her] employment," (*id.*), include the opportunity to appeal the unfavorable Arbitration Award, a legal decision that Union cannot make following its withdrawal from representation based on its conflict. Therefore, under these circumstances, we agree that *Herder* is distinguishable and that Miles may appeal the Arbitration Award. Although we recognize this holding deviates from the general principles discussed above, we do not believe this result will "lead to chaos and a breakdown of collective bargaining," *Ray*, 19 A.3d at 34 (citation omitted), given that it is based on the unique factual scenario presented and that it was a **Union decision** that effectively "diminished" its own "responsibility" in representing Miles, *id.*[10]

---

[10] We note this matter involves only the effect of Union's withdrawal of representation **on this case only**, and any issue of what effect, if any, Union's withdrawal here would have on its future representation of Miles is **not** before us.

12

Accordingly, we vacate common pleas' Order and remand for further proceedings.[11]

_____
**RENÉE COHN JUBELIRER,** Judge

---

[11] Because we conclude Miles has standing based on the unique circumstances of this case, we need not address Miles' claim that she has standing because Union breached its duty of fair representation. However, we note that granting an individual grievant standing to appeal an arbitration award is not the appropriate remedy for a claim that a union breached its duty of fair representation. *Krenzelak*, 566 A.2d at 348. Instead, "an employee who believes a union has breached its duty of fair representation must file an independent action against the union seeking damages, joining the employer as a party if necessary to facilitate a meaningful remedy." *Id.* (citing *Martino*, 480 A.2d 242; *Ziccardi v. Dep't of Gen. Servs.*, 456 A.2d 979 (Pa. 1982)). It is through this process that "the employee's direct interests are generally vindicated." *Kozura*, 791 A.2d at 1173-74.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jamie M. Miles,                 :

          Appellant      :

                        :

          v.             :    No. 966 C.D. 2018

                        :

FOP Lodge #5 and      :

City of Philadelphia     :

## O R D E R

**NOW**, August 23, 2019, the Order of the Court of Common Pleas of Philadelphia, entered in the above-captioned matter, is **VACATED**, and the matter is **REMANDED** for further proceedings.

Jurisdiction relinquished.

 

                                   _____

                                   **RENÉE COHN JUBELIRER,** Judge