[J-29-2025] [MO: Mundy, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| PENNY GUSTAFSON, | : | No. 24 WAP 2024 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court entered |
| | : | February 20, 2024, at No. 1298 CD |
| v. | : | 2022, reversing and remanding the |
| | : | Order of Cambria County Court of |
| | : | Common Pleas entered February |
| AMERICAN FEDERATION OF STATE, | : | 11, 2022, at No. 2021-3223. |
| COUNTY, AND MUNICIPAL EMPLOYEES, | : | |
| COUNCIL 13; AMERICAN FEDERATION | : | |
| OF STATE, COUNTY, AND MUNICIPAL | : | ARGUED:  April 10, 2025 |
| EMPLOYEES, DISTRICT COUNCIL 83; | : | |
| AND AMERICAN FEDERATION OF | : | |
| STATE, COUNTY, AND MUNICIPAL | : | |
| EMPLOYEES, LOCAL 2047, | : | |
| | : | |
| Appellants | : | |

## DISSENTING OPINION

**CHIEF JUSTICE TODD**                    **DECIDED:  JANUARY 21, 2026**

In reversing the decision of the Commonwealth Court, the majority concludes that, "when a public employee's claim for a union's breach of its duty of fair representation stems from the union's alleged mishandling of a grievance, the claim constitutes a 'dispute . . . arising out of the interpretation of the provisions of a collective bargaining agreement,'" such that "the employee's remedy from the court is limited to an order directing the underlying grievance be arbitrated *nunc pro tunc*."  Majority Opinion at 20 (quoting 43 P.S. § 1101.903) (ellipses original; footnote omitted).  Because I disagree with the conclusion that an employee's claim for a union's breach of the duty of fair representation arises out of a collective bargaining agreement ("CBA") and that, therefore,

under the Public Employe Relations Act ("PERA"),[1] a public employee who sues their union for breach of the duty related to its handling of a grievance may receive nothing more than an order directing arbitration of the underlying grievance *nunc pro tunc*, I must, respectfully, dissent.

The United States Supreme Court first recognized in *Steele v. Louisville & N.R. Co.*, 323 U.S. 192 (1944), that a union owes a duty of fair representation to all employees included in a bargaining unit to which it is the exclusive bargaining representative. Therein, the high Court determined that, by enacting the Railway Labor Act,[2] which authorized the creation of a labor union to serve as the exclusive bargaining representative of a class of railway employees, Congress "did not intend to confer plenary power upon the union to sacrifice, for the benefit of its members, rights of the minority of the craft, without imposing on it any duty to protect the minority." *Id.* at 199. Indeed, the Court emphasized that "[t]he labor organization chosen to be the representative of the craft or class of employees is . . . chosen to represent *all* of its members, regardless of their union affiliations or want of them." *Id.* at 200 (emphasis added). Thus, the Court reasoned that, via the language of the Railway Labor Act, Congress deliberately expressed the aim "to impose on the bargaining representative . . . the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, *without hostile discrimination against them*." *Id.* at 202-03 (emphasis added).

On the same day that it decided *Steele*, the Supreme Court seemingly extended the duty of fair representation to unions certified under the National Labor Relations Act ("NLRA").[3] *See Wallace Corp. v. N.L.R.B.*, 323 U.S. 248, 255-56 (1944) ("The duties of

---

[1] 43 P.S. §§ 1101.101 *et seq.*

[2] 45 U.S.C. §§ 151-188.

[3] 29 U.S.C. §§ 151-169.

a bargaining agent selected under the terms of the [NLRA] extend beyond the mere representation of the interests of its own group members. By its selection as bargaining representative, it has become the agent of all the employees, charged with the responsibility of representing their interests fairly and impartially. Otherwise, employees who are not members of a selected union at the time it is chosen by the majority would be left without adequate representation."). The high Court further expounded upon the duty owed by a bargaining unit representative under the NLRA in *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953), wherein it stated that the statutory obligation of a union to represent all members "requires [it] to make an honest effort to serve the interests of all of those members, without hostility to any." *Id.* at 337 (citations omitted).

While the high Court's initial consideration of the duty of fair representation pertained to a union's obligation to members in the course of bargaining with an employer, the Court later clarified that the duty also extended to the union's representation of employees during the grievance process. In the seminal case of *Vaca v. Sipes*, 386 U.S. 171 (1967), the Supreme Court opined that individual employees do not have the right to compel arbitration of grievances, even if meritorious in nature, as unions must be given considerable discretion to handle and settle employee grievances. Indeed, the Court reasoned that "the settlement machinery" provided by a CBA negotiated between a union and employer would otherwise be "substantially undermined," thus "destroying the employer's confidence in the union's authority and returning the individual grievant to the vagaries of independent and unsystematic negotiation." *Id.* at 191. The Court observed that this, in turn, would significantly increase "the cost of the grievance machinery," while simultaneously overburdening the arbitration process in a manner which would "prevent it from functioning successfully." *Id.* at 192. Nevertheless, the Court stressed that, "[i]n administering the grievance and arbitration machinery as statutory agent of the

employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances." *Id.* at 194 (citing *Humphrey v. Moore*, 375 U.S. 335, 349-50 (1964); *Huffman*, 345 U.S. at 337-39). In essence, the high Court clarified that, to prove a union's breach of its duty of fair representation, a dissatisfied employee of the bargaining unit must prove that their grievance was meritorious *and* that the union acted arbitrarily or in bad faith in processing the grievance. *Id.* at 193.

Of particular relevance to the instant case, the *Vaca* Court also concluded that "[t]he appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach." *Id.* at 195. Indeed, although the Court noted that "an order compelling arbitration should be viewed as one of the available remedies when a breach of the union's duty is proved," it declined to "inflexibly . . . require arbitration in all cases." *Id.* at 196. The Court reasoned that such a limitation would be improper, given that, in some cases, "part of the employee's damages may be attributable to the union's breach of duty, and an arbitrator may have no power under the bargaining agreement to award such damages against the union." *Id.* To that end, the Court opined that, in such cases, a court should remain "free to decide the contractual claim and to award the employee appropriate damages or equitable relief." *Id.* However, the Court cautioned that, in apportioning liability between the employer and the union, the "governing principle" is that damages should be determined in accordance with the fault of each party. *Id.* at 197. In that vein, the Court explained that "damages attributable solely to the employer's breach of contract should not be charged to the union," while any increases to those initial damages which are the result of the union's refusal to process the grievance "should not be charged to the employer." *Id.* at 197-98.

While the Supreme Court was refining the duty of fair representation in the federal realm, this Court concurrently honed the contours of the duty in the context of

Pennsylvania law. Our Court first considered the duty in *Falsetti v. Local Union No. 2026, United Mine Workers of America*, 161 A.2d 882 (Pa. 1960), wherein an employee filed a complaint in equity against his former employer and union officials after he was laid off in violation of the seniority provisions contained in the parties' CBA. The employee sought to be reinstated, with full seniority rights and damages. Following the initiation of his lawsuit, the employee was expelled from the union, prompting him to amend his complaint to join the union as a defendant, alleging wrongful severance of his union membership.

Initially, our Court determined that it was procedurally improper for the employee to allege two unrelated claims in a single complaint. Nevertheless, we proceeded to consider whether, on remand, assuming the claims were properly severed, the lower courts would have jurisdiction over either of the claims. With respect to the expulsion claim, we found that our courts would lack jurisdiction, given the employee's failure to exhaust the internal union remedies of appealing his expulsion to the union's executive board and then to the international union. Turning to the employee's attempt to garner reinstatement under the parties' CBA, we observed that nothing therein permitted an individual bargaining unit member to directly seek enforcement of the contractual terms. To that end, we explained that the relevant CBA — and most labor agreements generally — are drafted in a manner which limits the enforcement of the contract to actions (*i.e.*, grievances) brought and overseen by the union, as trustee for the individual employees of the bargaining unit, to prevent management from facing "the constant threat of attempted individual enforcement through litigation." *Id.* at 894. We found, however, that an employee does not lack a remedy where the union wrongfully declines to pursue a meritorious grievance on their behalf, emphasizing that, because the union "has assumed the role of trustee for the rights of its members and other employees in the bargaining

unit" by entering into the CBA, "the [u]nion bears a heavy duty of fair representation to all those within the shelter of its protection." *Id.* at 895 (citations omitted).

In light of this "heavy duty," we stressed that, "[i]f the [u]nion, in processing an employee's grievance, does not act in good faith, in a reasonable manner[,] and without fraud, *it becomes liable in damages for breach of duty*." *Id.* (emphasis added). This, we reasoned, would both compensate the employee "for the harm he had suffered" and simultaneously preserve "the process of collective bargaining in the industry." *Id.* at 896. Despite finding that unions owe a broad duty to fairly represent all employees included in their bargaining units, we concluded that the employee's suit could not proceed, as he brought it against his union representatives, rather than the union itself.

We next examined the duty of fair representation in *Ziccardi v. Commonwealth*, 456 A.2d 979 (Pa. 1982), wherein we clarified that an employee's claim against their union for refusing to submit a grievance to arbitration "does not fall under any of the categories of unfair labor practices enumerated in Section 1201(b) of PERA."[4] *Id.* at 980 (citation and footnote omitted). In so doing, we reaffirmed our determination that "a public employee's remedy for his bargaining agent's refusal to submit a grievance to arbitration is an action *against the union for damages* for breach of its duty of fair representation." *Id.* at 981 (emphasis added). We also highlighted that, in the context of an employee who sues a union for failing to process a grievance challenging their discharge from employment, "the issue of just cause does not determine liability" for the union's breach of the duty of fair representation, but, instead, "becomes relevant on the issue of damages[] only after bad faith has been shown" on the part of the union. *Id.* Relatedly, we observed that "an employee has no right to sue his *employer* in equity and assumpsit for wrongful discharge where his *union* has refused to proceed to arbitration," as

---

[4] 43 P.S. § 1101.1201(b)(1).

> giving the employee an unfettered right to sue the employer for the union's bad faith[] . . . would relieve the wrongdoer of any effective sanction, make the plaintiff whole at the expense of an innocent party[,] and bind that innocent party by the action of the plaintiff's agent, over whom it has no control.

*Id.* at 981-82 (emphasis added).

Two years after our decision in *Ziccardi*, we were tasked with determining whether a public employee is precluded from obtaining relief against his public employer for discharge in breach of a CBA "when the union has violated its duty of fair representation by failing in bad faith to pursue his grievance to impartial arbitration." *Martino v. Transp. Workers' Union of Phila., Local 234*, 480 A.2d 242, 243 (Pa. 1984). In *Martino*, the union filed a grievance on behalf of an employee who was discharged from his employment with the Southeastern Pennsylvania Transportation Authority ("SEPTA"); however, after the first three steps of the grievance procedure were resolved in SEPTA's favor, the union declined to seek arbitration of the grievance. In turn, the employee filed a complaint against SEPTA, alleging that it discharged him in violation of the relevant CBA. The employee also sought relief from the union, arguing that it breached its duty of fair representation in declining to submit his grievance to arbitration.[5] As a remedy, the employee sought an order compelling the union and SEPTA to participate in an arbitration proceeding *nunc pro tunc*.

On review, we concluded that an employee alleging that his union breached its duty of fair representation in handling his grievance may seek arbitration *nunc pro tunc* under state or federal law, stressing, however, that the employee is required to join his employer as a party to the lawsuit where "such joinder is necessary to afford him an adequate remedy." *Martino*, 480 A.2d at 245. In that vein, we distinguished *Ziccardi*,

---

[5] Notably, the employee did not claim that SEPTA was embroiled in the union's breach of its duty of fair representation.

noting that, therein, "we did not consider nor did we preclude joining the employer where necessary to provide a just and effective remedy," given that the employee in *Ziccardi* sought a contractual remedy directly against his employer, rather than seeking to arbitrate his grievance *nunc pro tunc*. *Id.* Nevertheless, cautioning that the union's breach of its duty of fair representation "should not deprive the employer of all the procedural and substantive benefits of the bargained for grievance procedure" mandated under PERA, we concluded that an employee's relief *against his employer* under PERA for discharge in violation of the relevant CBA "is limited to an order from the chancellor compelling arbitration of the underlying grievance." *Id.*

It is largely based upon the framework espoused in *Martino* that the majority in the case *sub judice* finds that the only remedy available to Appellee Penny Gustafson for the alleged breach of the duty of fair representation by her union, the American Federation of State, County, and Municipal Employees ("AFSCME"), is an order compelling AFSCME and Appellee's employer, the Commonwealth Department of Human Services ("DHS"), to submit to arbitration *nunc pro tunc*, and therein consider the merits of the grievance previously filed regarding Appellee's ostensible loss of overtime opportunities. Despite the inherent differences between this matter and *Martino* — namely, that, here, Appellee sued only the union for its breach of the duty of fair representation and did not seek an order compelling arbitration or any other remedy which would require her employer's participation; whereas, in *Martino*, the employee sued his employer, as well as his union, and expressly and solely sought arbitration of the underlying grievance seeking his reinstatement to employment — the majority applies the same reasoning espoused in *Martino*, highlighting that Section 903 of PERA mandates the arbitration of "disputes or grievances arising out of the interpretation of the provisions of a [CBA]." 43 P.S. § 1101.903; *see* Majority Opinion at 18. In so doing, the majority concludes that Appellee's

"dispute with AFSCME falls within Section 903's arbitration mandate," *id.* at 18, because, "[a]t the heart of [her] complaint is her assertion that the grievance resolution agreed to by AFSCME was inadequate and she was entitled to a more advantageous outcome under the [CBA]," *id.* at 19. Thus, in the majority's view, Appellee's complaint necessarily "aris[es] out of the interpretation of the provisions of a [CBA]." *See* 43 P.S. § 1101.903. On top of this determination concerning Appellee's complaint, the majority sweepingly pronounces that in *all* instances in which "a public employee's claim for a union's breach of its duty of fair representation stems from the union's alleged mishandling of a grievance, the claim constitutes a 'dispute . . . arising out of the interpretation of the provisions'" of a CBA. Majority Opinion at 20 (quoting 43 P.S. § 1101.903). I cannot subscribe to the majority's findings in this regard.

As the majority explains, "public sector unions' duty of fair representation is derived from their statutory authority as the exclusive representative of all members of the bargaining unit the union has been selected to represent." *Id.* at 16 (citing 43 P.S. §§ 1101.602, 1101.606). While, indubitably, a public sector union in Pennsylvania would incur no duty of fair representation if it was not officially certified to represent a bargaining unit, PERA does not expressly bind public sector unions to adhere to the duty of fair representation. Indeed, as a result, our Court concluded that a claim raising a union's breach of its duty did not constitute an unfair labor practice. *See Ziccardi*, 456 A.2d at 980 ("The union's refusal to submit a grievance to arbitration does not fall under any of the categories of unfair labor practices enumerated in Section 1201(b) of PERA"). The distinct lack of express statutory language evinces that, although the duty of fair representation which is incumbent upon a public sector union is, in a sense, tethered to PERA, the duty is not derived solely therefrom nor governed entirely thereby.

Rather, despite the inherent connection to labor statutes, the duty of fair representation has "judicially evolved" as "an essential means of enforcing fully the important principle that 'no individual union member may suffer invidious, hostile treatment at the hands of the majority of his coworkers.'" *Breininger v. Sheet Metal Workers Int'l Ass'n Loc. Union No. 6*, 493 U.S. 67, 79 (1989) (citations omitted); *see Tech., Pro., & Officerworkers Ass'n of Mich. v. Renner*, 15 N.W.3d 524, 533 (Mich. 2024) (observing that "the duty of fair representation under federal law [i]s a hybrid of statutory and common law because it was judicially crafted under the common law but derived from the NLRA" (citation omitted)). From my perspective, like the federal duty of fair representation, the duty in this Commonwealth is a hybrid creature of both statutory and common law origins which is akin to a fiduciary duty, paralleling "the duty a trustee owes to trust beneficiaries," "the relationship between . . . attorney and client," or "the responsibilities of corporate officers and directors toward shareholders." *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 74-75 (1991) (citations omitted).

More significantly, notwithstanding the origins of the duty of fair representation imposed on public sector unions in our Commonwealth, contrary to the majority's suggestion, the duty does not arise out of CBAs. The most obvious rebuke of the majority's finding in this regard may be detected in the early Supreme Court cases adopting and defining the duty of fair representation, wherein the breaches of the duty arose in the context of *contract negotiations*. *See Breininger*, 493 U.S. at 80 ("Indeed, the earliest fair representation suits involved claims against unions for breach of the duty in *negotiating* a collective-bargaining agreement, a context in which no breach-of-contract action against an employer is possible." (citing *Ford*, *supra*; *Steele*, *supra*) (emphasis original)); *see also Air Line Pilots*, 499 U.S. at 77 (observing that the duty applies in other contexts, "such as when the union operates a hiring hall" (citation omitted)). Plainly, if the

duty of fair representation is imposed on a union before the effectuation of a CBA, a claim for breach of that duty cannot be characterized as a "dispute[] or grievance[] arising out of the interpretation of the provisions of a [CBA]," 43 P.S. § 1101.903, which is subject to mandatory bargaining under Section 903 of PERA, as the majority purports.

Moreover, because a CBA is a contract between an employer and a union, it does not typically contemplate the specifics of the relationship between the union and the employees in the certified bargaining unit, much less internal union affairs. This is for good reason, as these matters do not involve employers; indeed, it would go against a union's own interests to enter into negotiations with an employer over such matters. Simply stated, it would be contrary to purpose of collective bargaining and the nature of CBAs to negotiate over such topics. In any event, given that, in the instant case, the relevant CBA between AFSCME and DHS is not included in the record before this Court, I find it vexing that the majority has deemed Appellee's suit based on AFSCME's breach of the duty of fair representation to be an issue which arises out of the interpretation of the CBA. Likewise, I am perplexed that the majority has declared that *all* suits for a union's breach of the duty of fair representation stemming from alleged mishandling of a grievance arise from the interpretation of a CBA, without requiring individualized assessment of the contract in place between the parties involved in each particular case.

Here, without the relevant CBA, the nature of Appellee's claim against AFSCME must be discerned solely from her complaint. The claim Appellee raises therein relates to nothing more than AFSCME's alleged breach of its duty of fair representation in processing and settling the grievance filed on her behalf; Appellee does not allege wrongdoing on the part of DHS or seek to vindicate a right under the parties' CBA, nor does she seek monetary damages related to the underlying grievance or the opportunity to arbitrate her grievance *nunc pro tunc*, as did the employee in *Martino*, *supra*. In light

of the limited nature of her complaint, particularly when coupled with the lack of contract language pertaining to the union's duty of fair representation, I struggle to see how Appellee's complaint against AFSCME "aris[es] out of the interpretation of the provisions of a [CBA]," 43 P.S. § 1101.903, such that her claim is subject to mandatory arbitration and her remedy for the union's breach of its duty limited to an order compelling arbitration *nunc pro tunc*.

Relatedly, I find that *Martino* does not support the majority's ultimate conclusion in that regard, given that the majority neglects to meaningfully acknowledge that the employee in *Martino* sought as his sole remedy arbitration of his grievance *nunc pro tunc*. Although arbitration of grievances arising under the terms of a CBA is mandatory under Section 903 of PERA, arbitration clauses are regularly included in CBAs as the final step in the grievance procedure. By seeking an order directing the parties to arbitrate his grievance, the employee in *Martino* necessarily affixed his claim to the terms of the CBA, thus rendering his claim within the purview of the parties' CBA. Appellee, conversely, seeks monetary damages which are not similarly contained within the terms of the applicable CBA, at least as far as I can discern from the record before our Court; consequently, Appellee should not be limited to arbitration of her underlying grievance *nunc pro tunc* based on *Martino's* interpretation and application of Section 903.

Moreover, from my perspective, the majority's reliance upon *Martino* to bar Appellee from seeking damages against AFSCME wholly disregards the general nature of the duty which a union owes to those employees under its charge and renders hollow our pronouncements in *Falsetti* and *Ziccardi* that an employee *may* recover damages against their union stemming from the union's breach of its duty of fair representation. *See Falsetti*, 161 A.2d at 895 ("If the Union, in processing an employee's grievance, does not act in good faith, in a reasonable manner and without fraud, *it becomes liable in*

*damages* for breach of duty." (emphasis added)); *Ziccardi*, 456 A.2d at 981 ("In *Falsetti* this Court held that a public employee's remedy for his bargaining agent's refusal to submit a grievance to arbitration is an action *against the union for damages* for breach of its duty of fair representation." (emphasis added)). Hence, in my view, the only way to harmonize *Falsetti*, *Ziccardi*, and *Martino* is to find that the latter is limited to its facts: that an employee who sues their union for breaching its duty of fair representation in handling a grievance is limited to the remedy of arbitration *nunc pro tunc* only when that employee seeks reinstatement for being discharged without just cause under the relevant CBA and the union fails to process the related grievance. *See, e.g.*, *Maloney v. Valley Med. Facilities, Inc.*, 984 A.2d 478, 485-86 (Pa. 2009) ("[T]he axiom that decisions are to be read against their facts prevents the wooden application of abstract principles to circumstances in which different considerations may pertain." (internal citation omitted)); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 378 (Pa. 2014) (stressing that legal rules, especially broad ones, must be read "against their facts and the corollary that judicial pronouncements should employ due modesty"). Otherwise, the majority's expansive interpretation of *Martino*, beyond its facts, will essentially overrule the holdings in *Falsetti* and *Ziccardi* that a union may be held liable for damages as a result of its breach of the duty of fair representation.

I also find that the majority's limitation on an employee's remedies in cases alleging that a union breached its duty of fair representation in handling a grievance could embolden unions to disparately treat bargaining unit employees who are not union members, as a union will face no meaningful consequences for engaging in such discriminatory behavior. Indeed, under the rule enunciated by the majority, a union's only consequence for even the most egregious breach of its duty of fair representation will be to merely represent the aggrieved employee at arbitration as it should have in the first

place.  A union could discriminate with near impunity, knowing that, if an employee sues, at most, it will be required to arbitrate the underlying grievance *nunc pro tunc*, rendering the union no worse off than if it had processed the grievance to arbitration in the first place.  Meanwhile, the aggrieved employee must accept representation in that arbitration from the very entity (and representatives) that subjected them to discriminatory conduct, with nothing constraining the union representatives from subjecting the aggrieved employee to further hostile or invidious acts.[6]  Thus, there will be nothing to deter union representatives from engaging in discriminatory behavior against employees on the basis of their union membership status, or, indeed, based upon other protected attributes like race, sex, or religion.  This would be ironic, as instances of racial discrimination spurred the creation and recognition of the duty of fair representation just short of a century ago. *See, e.g.*, *Steele*, *supra*.

Not only will the majority's decision render the common law duty of fair representation hollow in this way, it will also place an unfair burden upon employers such as DHS that have engaged in no wrongdoing — in a sense, requiring employers to subsidize union wrongdoing and depriving employers of the benefit of their bargain struck during the grievance settlement process.  For example, here, DHS engaged in the grievance procedure with AFSCME in good faith, ultimately reaching what it believed to be a mutually-acceptable resolution of the grievance pertaining to Appellee's overtime-related claims.  Requiring DHS to submit to arbitration *nunc pro tunc*, despite the fact that

---

[6] Here, for example, the majority's remedy forces Appellee to sit through an arbitration hearing while represented by the very union representatives whom she alleges called her a "free rider," Complaint at 7 ¶ 51, and a "freeloader" who was "sponging" off the union, *id.* ¶ 53.  Once again, the circumstances of this case diverge from those which were before us in *Martino*, as the employee in *Martino* expressly sought to have the union arbitrate his grievance, evidencing that he lacked any trepidation about receiving representation from the same entity and individuals he claimed breached the duty of fair representation.  Moreover, his main allegations of wrongdoing were directed at his employer, rather than his union.

it was not involved in the union's alleged wrongdoing, results in an innocent party suffering consequences through no fault of its own. Moreover, placing such a burden upon innocent employers will negatively impact the field of labor law as a whole by upending employers' ability to rely upon settlements of grievances reached between themselves and the unions with which they are associated. *See Bowen v. U.S. Postal Serv.,* 459 U.S. 212, 226 (1983) ("When the union, as the exclusive agent of the employee, waives arbitration or fails to seek review of an adverse decision, the employer should be in substantially the same position as if the employee had had the right to act on his own behalf and had done so. Indeed, if the employer could not rely on the union's decision, the grievance procedure would not provide the uniform and exclusive method for the orderly settlement of employee grievances, which the Court has recognized is essential to the national labor policy." (quotation marks, citations, and brackets omitted)). Plainly, as we observed in *Ziccardi*, the party that engaged in wrongdoing should be the party to suffer the consequences of its actions; we should not be placing those consequences on innocent parties. *See Ziccardi*, 456 A.2d at 982 ("By giving the employee an unfettered right to sue the employer for the union's bad faith, we would relieve the wrongdoer of any effective sanction, make the plaintiff whole at the expense of an innocent party and bind that innocent party by the action of the plaintiff's agent, over whom it has no control. This would be in total violation of the principles of the law of agency.").

The majority attempts to rectify this inequity by pronouncing that, pursuant to *Martino*, the arbitrator will be required to apportion damages between the union and the employer during the ensuing *nunc pro tunc* arbitration. *See* Majority Opinion at 22. The majority is correct that the *Martino* Court asserted that an arbitrator would have the ability to apportion damages between the employer and the union in fashioning a remedy to make the aggrieved employee whole, finding that the Supreme Court's decision in *Bowen*,

*supra*, laid the groundwork for such a premise. Critically, the sum of the Court's reasoning to that effect is as follows:

> We are also persuaded by *Bowen* that [an arbitrator] must limit the employer's liability for backpay to the period from the date of wrongful discharge to the date when arbitration would normally have commenced. In the absence of an apportionment providing meaningful sanctions against the union, incentives to comply with the grievance procedure would be diminished.

*See Martino*, 480 A.2d at 251. I am unconvinced that *Martino's* scanty conclusion in this regard transcends the category of mere *dicta*,[7] as the sole question before the Court in *Martino* distilled to whether the courts of common pleas had subject matter jurisdiction over the employee's complaint against his employer and his union. *See id.* at 243 ("*The sole question for our consideration* is whether a public employee is totally precluded from obtaining any relief directly or indirectly, involving his public employer, for discharge in arguable breach of a collective bargaining agreement when the union has violated its duty of fair representation by failing in bad faith to pursue his grievance to impartial arbitration." (emphasis added)).[8]

In any event, *Martino* does not justify the conclusion that, in this case, an arbitrator would have the authority to apportion damages in a *nunc pro tunc* arbitration. In my view, any precedential effect *Martino* might have with respect to the issue of apportionment is

---

[7] As we have recently reiterated, "'*dicta*' is an opinion by a court on a question that is directly involved, briefed, and argued by counsel, and even passed on by the court, but that is not essential to the decision" and, thus, lacks precedential value. *In re Huff*, 334 A.3d 232, 245 n.11 (Pa. 2025) (citation and internal quotation marks omitted).

[8] The Superior Court's decision in *Martino* also demonstrates the limited nature of the appellate arguments raised by SEPTA therein. *See Martino v. Transp. Workers Union of Phila. Loc. 234*, 447 A.2d 292, 295 (Pa. Super. 1982) ("SEPTA argues on appeal that (1) the trial court lacks subject matter jurisdiction to consider appellee's complaint, (2) that the appellee failed to exercise or exhaust his statutory remedy under the PERA and (3) the complaint fails to state a cause of action.").

limited to cases in which the employee's claim against a union for breach of the duty of fair representation relates to the mishandling of a grievance challenging an alleged wrongful discharge. The *Martino* Court's reliance upon *Bowen* in championing apportionment in the employee's *nunc pro tunc* arbitration reveals as much. In *Bowen*, the high Court was confronted with the question of "whether a union may be held primarily liable for that part of a wrongfully discharged employee's damages caused by his union's breach of its duty of fair representation." *Bowen*, 459 U.S. at 214. In resolving this issue, the high Court rejected the union's contention that it could not be deemed liable for damages resulting from an employee's wrongful discharge and that it was, instead, liable only for the employee's litigation expenses arising in connection with the union's breach of its duty of fair representation in handling the employee's grievance. In the Court's view, the union's position in this regard skirted *Vaca's* governing principle of apportionment of damages between an employer and a union, where the former wrongfully discharged an employee and the latter breached its duty of fair representation with respect to a grievance challenging that discharge. Ultimately, the Court concluded that apportionment was necessary "where the default of both parties contributes to the employee's injury," or else "incentives to comply with the grievance procedure will be diminished." *Id.* at 227. Consequently, the Court upheld the district court's jury instruction indicating that the jurors were to apportion the compensatory damages owed to the employee by attributing damages arising before the hypothetical date of an arbitration decision to the employer and any damages arising after that date to the union. Notably, because the union challenged the district court's instructions "only on the ground that no back wages at all could be assessed against it," the Court declined to consider whether the district court's instructions with respect to the manner in which to apportion damages between the employer and the union were proper. *Id.* at 230 n.19.

With this background, it is dubious that the reasoning espoused in *Bowen* can apply outside of the context of a duty of fair representation claim triggered by a bargaining unit employee's wrongful discharge coupled with the union's failure to properly handle a grievance challenging that discharge. While the holding in *Bowen* logically could have governed the outcome of *Martino* (if the apportionment issue had been before the Court), it strains credulity to extend the same reasoning to this case, given that Appellee *was not discharged from her employment* and *does not seek back pay*. Rather, because Appellee seeks only damages from the union for its breach of the duty of fair representation in handling her grievance, there would be nothing for an arbitrator to apportion. As noted, cases must be read against their facts, to avoid extending holdings beyond their proper context. *Tincher*, *supra*; *Maloney*, *supra*.

Furthermore, and critically, *Martino's* cursory foray into the issue of apportionment neglects to identify the basis of an arbitrator's authority to apportion damages between an employer and a union, and the majority in this case offers no further insight into the matter. Indeed, after summarizing *Martino's* conclusion regarding apportionment, the majority states only that:

> Consistent with our reasoning in *Martino*, if a court orders an employee's underlying grievance to be arbitrated *nunc pro tunc* due to the union's breach of its duty of fair representation, the arbitrator is required to determine the merits of the employee's grievance and apportion damages, if any, between the employer and the union in accordance with their respective responsibility.

Majority Opinion at 22 (citing *Martino*, 480 A.2d at 252). However, it is well-established that an issue is "appropriately before the arbitrator" only if "the issue is embraced by the [CBA]." *State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999). An arbitrator lacks jurisdiction to issue an award that is not rationally derived from the terms of the CBA at issue. *Millcreek Twp.*

*Sch. Dist. v. Millcreek Twp. Educ. Support Pers.*, 210 A.3d 993, 1002 (Pa. 2019) (citation omitted). Although *Millcreek* and *Cheyney* were decided in the context of the essence test — the deferential standard of review employed by courts assessing the validity of an arbitrator's award on appeal — they nonetheless support the conclusion that an arbitrator lacks the authority to consider an issue that does not fall within the scope of the CBA which they are tasked with interpreting, nor may an arbitrator craft an award that exceeds that which is authorized under the CBA. *See Vaca*, 386 U.S. at 196 (observing that "an arbitrator may have no power under the bargaining agreement to award such damages against the union"). Here, there is no indication in the record that the CBA negotiated between AFSCME and DHS provides an arbitrator with the ability to craft an award entitling Appellee to monetary damages from AFSCME, so I presume that the parties did not include terms providing arbitrators with such a power.[9]

From my perspective, if Appellee were permitted to seek damages against the union in the trial court, the court would be able to craft a remedy specific to AFSCME's alleged breach of its duty of fair representation, unlike an arbitrator who is bound by the terms of the CBA. In so doing, the trial court would not be acting as an arbitrator even though it would be required to examine the underlying grievance in assessing damages if Appellee were to successfully prove that AFSCME breached its duty in handling her grievance. Appellee analogizes the trial court's role to the role a court undertakes in a legal malpractice case, reasoning that, "when a lawyer commits malpractice, it does not mean that the client may reopen the case that the lawyer mishandled," but, instead, the

---

[9] Given my view that an arbitrator would lack the authority — unless specifically bargained for between AFSCME and DHS and included in the text of the CBA — to award damages against AFSCME, as well as the fact that Appellee does not seek damages from DHS or its participation in an arbitration, I see no reason why DHS would be an indispensable party to Appellee's lawsuit. *See* Majority Opinion at 21-22. Indeed, in *Martino*, we merely observed that an employer is an indispensable party where "joinder is necessary to afford him an adequate remedy." *Martino*, 480 A.2d at 245.

client may obtain damages from the lawyer to hold him or her accountable. Appellee's Brief at 29. I find some merit to Appellee's contention in this regard, as, here, the trial court need not *decide* the merits of the grievance, albeit it would assess the underlying claim in the context of determining the appropriate remedy for the union's breach of its duty of fair representation in order to make Appellee whole for her losses. *See, e.g.*, *Ziccardi*, 456 A.2d at 981 (noting that the merits of the underlying grievance in the context of the relevant language of the CBA "becomes relevant on the issue of damages[] only after bad faith has been shown"). This is similar to a legal malpractice case, in which the trial court examines the underlying case wherein the practitioner allegedly committed malpractice to determine damages, but stopping short of reopening or relitigating that underlying case.

Notably, under the standard delineated herein, an employee would still be required to overcome a high bar to prove that their union breached its duty of fair representation in handling a grievance, given that unions are afforded substantial leeway in pursuing and settling grievances. The grievance process "cannot be expected to be error-free," *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571 (1976), and an employee alleging a breach of the duty of fair representation "must prove that the union acted in bad faith" in mishandling a grievance, *Martino*, 480 A.2d at 252. This high bar insulates unions from exposure to vexatious and frivolous lawsuits. Additionally, in my view, even where an employee meets their burden of proving that the union acted in bad faith, the union would nonetheless have the opportunity to demonstrate that its settlement or refusal to pursue the underlying grievance was based on a legitimate, nondiscriminatory reason and that the employee would not have achieved a more favorable result in an arbitration.

For these reasons, and because "[t]he appropriate remedy for a breach of a union's duty of fair representation must vary with the circumstances of the particular breach,"

*Vaca*, 386 U.S. at 195, I find the majority's narrow rule — that the only remedy available to an employee who has been harmed by such a breach is arbitration of their underlying grievance *nunc pro tunc* — to be erroneous. I likewise disagree with the majority's determination that the arbitrator in a *nunc pro tunc* arbitration arising in connection with a union's alleged breach of the duty of fair representation would be authorized to apportion damages between an employer and a union in crafting an arbitration award. In my view, under our case law, Appellee may sue AFSCME, outside of the context of arbitration, and, if she is able to prove that it breached its duty of fair representation owed to her, be awarded damages.

Accordingly, for the foregoing reasons, I would affirm the Commonwealth Court's order.

Justices Donohue and Brobson join this dissenting opinion.